## DE MOTT *vs.* STARKEY and others.

The purchaser of a negotiable note, or bill of exchange, not payable on demand but at a specified time, is not a bona fide holder thereof without notice, if he became such purchaser after the bill or note had become due and was dishonored.   In other words, the purchaser of a bill or note which has become due and payable, according to the terms thereof, takes it subject to all equities, or legal or equitable defences which existed against it in the hands of the person from whom he received it.

To entitle a party to the character of a bona fide purchser without notice of a prior right or equity, he must not only have obtained the legal title to the property, or the negotiable security, but he must have paid the purchase money, or some part thereof at least, or have parted with something of value upon the faith of such purchase, before he had notice of such prior right or equity.

THIS was an appeal from a decree of the assistant vice chancellor of the first circuit.   The facts as established by the pleadings and proofs, and the proceedings in the cause, were substantially as follows :

The complainant being the owner of a farm in the county of Seneca, sold it to H. Montgomery, and took from him a bond and mortgage to secure the payment of the purchase money. Montgomery afterwards sold and conveyed the farm to W. W. Starkey, one of the defendants in this suit, and took from him a bond and mortgage to secure the purchase money on that sale; amounting to $5280, payable in several instalments.   At the time of the execution of the last bond and mortgage, Montgomery wished the complainant to take the same and cancel his bond and mortgage, so as to relieve the farm in the hands of Starkey from that incumbrance.   But the complainant was unwilling to do so, as Montgomery was embarrassed in his cir-

cumstances, and had been sued, and the complainant was apprehensive there might be intermediate incumbrances upon the property which would affect the validity of the security of the Starkey mortgage. It was therefore agreed between Starkey and Montgomery and the complainant, that Starkey should make the payments upon his mortgage to Montgomery, as they became due, to the complainant, to be applied on the mortgage of Montgomery to the latter; and that whenever it could be safely done the first bond and mortgage should be cancelled, and Starkey's bond and mortgage should be assigned, by Montgomery, to the complainant in lieu thereof. When the first payment upon Starkey's bond and mortgage became due, the complainant not deeming it then safe to cancel the first mortgage, and Starkey not being willing to make an absolute payment on his own bond and mortgage, while the complainant's bond and mortgage was still outstanding, it was agreed between them that Starkey should advance to the complainant $700 to be applied towards the first payment upon the bond and mortgage to Montgomery when the same should be assigned to the complainant, and when the mortgage of Montgomery to the latter should have been cancelled; and that in the meantime the complainant should give his note to Starkey for the amount, to be collectable in case the arrangement for the cancelling of the first mortgage and the assignment of the second should not be perfected. The money was advanced and a note given therefor, accordingly, on the 18th of June, 1839, payable one day after date. In December, 1840, the complainant having become satisfied that it would be safe for him to do so, cancelled his bond and mortgage and took the assignment of Starkey's bond and mortgage, which had been left in the hands of a third person to be delivered to the complainant in that event; and Starkey was duly notified of the assignment, and that the first mortgage had been cancelled.

In July, 1840, Starkey transferred the $700 note to his uncle, Clayton Semans, and took his note for the same amount. But nothing was paid by the latter on account thereof until the fall of 1841, many months after he had been made acquainted with

De Mott v. Starkey.

the complainant's rights; and after the note of the latter had been formally demanded of himself as well as of Starkey, accompanied by an offer to endorse or receipt the amount thereof upon the bond and mortgage which had been assigned to the complainant.

The bill was filed in April, 1842, to foreclose Starkey's bond and mortgage; he never having paid any thing thereon except the $700 for which his note was given. Semans was made a party; and the bill, after stating these facts, prayed that Semans might deliver up the $700 note of the complainant, to be cancelled, and that the amount thereof might be allowed upon the bond and mortgage, and for a foreclosure and sale for the payment of the residue of the debt. The assistant vice chancellor made a decree accordingly. And the defendant Semans appealed from that part of the decree which directed the surrender of the note and the allowance of the amount thereof upon Starkey's bond and mortgage; and from so much of the decree as directed Starkey and Semans to pay the extra costs occasioned by the litigation in this matter, beyond the ordinary expense of a foreclosure suit where there is no defence.

A. *Thompson*, for the appellant.

E. *Sandford*, for the respondent.

THE CHANCELLOR. The assistant vice chancellor arrived at a correct conclusion in this case, not only as to the matters of fact, but also as to the legal and equitable rights of the parties. The evidence fully establishes the fact that the $700 note in controversy was not given upon a loan made to De Mott; but was merely a security for the return of the amount, with interest, in case the arrangement should not be consummated so as to have the $700 applied as a payment on Starkey's bond and mortgage, upon its being assigned to the complainant in payment of Montgomery's prior mortgage. Starkey having gone into the actual possession of the farm, and occupied it for two seasons without paying any 'part of his purchase money, and

the farm being then of less value than the principal and interest due upon his bond and mortgage, the selling of the $700 note to a third person, so as to secure the repayment of that amount to himself, instead of having it applied upon the bond and mortgage according to his agreement, was an attempt to defraud De Mott out of that amount. And Semans, the appellant, was not authorized to hold and collect the note, as against the right of the maker thereof to have it applied upon the bond and mortgage, according to the agreement of Starkey, unless he could establish a state of facts entitling him to the character of a bona fide purchaser and holder of the note for a valuable consideration, and without notice of the complainant's rights. And the appellant wholly failed to establish such a defence in this case.

It is now the settled law, both here and in England, that the purchaser of a negotiable note or bill of exchange, not payable upon demand but at a specified time, is not in a situation to sustain the character of a bona fide holder thereof without notice, if he became such purchaser after the bill or note had become due and was dishonored. In other words, the purchaser of a bill or note which has become due and payable, according to the terms thereof, takes it subject to all equities, or legal or equitable defences, which existed against it in the hands of the person from whom he received it. (*Bayly on Bills,* 2d Am. ed. 134, 544. *Chitty on Bills, Barb.* ed. 244. 5 *John. Rep.* 118. 8 *Idem,* 454.) Here, by the terms of the note, it had been due and payable more than twelve months before Semans became the purchaser thereof. He should therefore have inquired and ascertained from De Mott whether it was actually due, and was to be paid by him; before he purchased it of Starkey. And having neglected to do so, he took it subject to the right of De Mott to have the amount applied in part payment of the bond and mortgage of Starkey in case he should cancel his own bond and mortgage and take an assignment of Starkey's bond and mortgage to Montgomery, in lieu thereof.

Again; to entitle a party to the character of a bona fide purchaser without notice of a prior right or equity, such party must

not only have obtained the legal title to the property, or the negotiable security, but he must have paid the purchase money, or some part thereof at least, or have parted with something of value upon the faith of such purchase, before he had notice of such prior right or equity. And Semans, long before he made any payment to Starkey on account of the purchase of this $700 note, not only had notice of De Mott's rights under the agreement with Starkey, but had been formally called on to surrender up the note to De Mott's agent, and to have th amount thereof endorsed upon the bond and mortgage. The payment of any part of the purchase money of the note, after what had then taken place, was a payment in his own wrong; and was an attempt to assist Starkey in defrauding the complainant. The assistant vice chancellor, therefore, properly charged the appellant, as well as Starkey, with the extra costs occasioned by their unconscientious defence in this case.

No part of the decree appealed from was erroneous, and it must be affirmed with costs.