## PORTER *against* WILLIAMS and CLARK.

A receiver appointed by a judge in proceedings supplementary to execution, obtains title to the property of the judgment debtor by force of his appointment, when perfected, without the execution of an assignment by the debtor.

Such receiver does not stand merely in the place of the debtor, but represents the creditors, and may therefore maintain an action to set aside an assignment of real and personal property made by the debtor in fraud of his creditors.

Such property may be sold by the receiver, under the direction of the court, and the proceeds applied in satisfaction of the debts of the fraudulent assignor.

An assignment authorizing the assignee to sell the assigned property on credit, is fraudulent as against creditors.

Such assignment cannot be made valid by any new instrument directing the property to be sold for cash, executed by the assignor after the assignee has accepted the assignment and taken possession of the assigned property. The assignment being valid as against the assignor, no power remains in him to modify in any respect the disposition which it makes of the property.

On the 5th of January, 1850, the defendant Williams, who was then a debtor of The Dutchess County Iron Company, made an assignment of all his property, real and personal, except such as was by law exempt from execution, to the defendant Clark, for the benefit of his creditors, according to a certain order of preference. By the terms of this instrument the assignee was authorized to dispose of the property assigned " either at public or private sale, to such person or persons, for such price or prices and on such terms and conditions, *and either for cash or credit*, as in his judgment may appear best and most for the interest of the parties concerned." On the 30th of March Williams

Porter *against* Williams and Clark.

executed and delivered to Clark an instrument, which, after reciting that doubts had arisen whether the authority to sell on credit did not vitiate the assignment of 5th of January, proceeded to direct the assignee to sell for cash only. On the 27th of February, The Dutchess County Iron Company recovered judgment for their debt against the defendant Williams, and upon the return of execution unsatisfied, supplementary proceedings under the Code were instituted. On the 28th of March an order was made by a justice of the supreme court requiring the judgment debtor to appear and answer before a referee appointed for that purpose, and on the 4th of April following the plaintiff was appointed receiver. No assignment was ever made to the receiver by the judgment debtor.

This action was brought in the supreme court to set aside the assignment from Williams to Clark, and after judgment for the plaintiff, affirmed at general term, the defendants appealed to this court.

*M. Pechtel* for the appellants.

I. There is no authority given at common law or by statute for a receiver to maintain an action at all to set aside an assignment. The 292d section of the Code only requires the " debtor to appear and answer concerning his property." Section 298 authorizes the appointment of a receiver of the property of the judgment debtor. It does not, however, appoint him the receiver of property, the title to which had passed out of the debtor prior to his appointment. Such a receiver never had the power to institute or maintain an action as receiver to set aside the conveyance of the judgment debtor as fraudulent, and the action cannot be maintained; the injured party must commence the suit. (*Greene* v. *Hicks*, 1 *Barb. Ch. Rep.*, 314; *Dorr* v. *Noxon*, 5 *How. Pr. Rep.*, 29; *Hyde* v. *Lynde*, 4 *Comst.*, 387, 392, 393.) At most he is but a ministerial officer of a court of

equity, to " receive the rents, issues and profits of land, or
any other thing in question in the court of chancery, pending
a suit, where it does not seem reasonable to the court that
either party should do it." (*The Chautauque Co. Bank* v.
*White,* 6 *Barb.,* 597; 2 *Paige,* 452; *Wyatt's Prac. Reg.,*
355.) He is appointed *to protect* some fund during the litiga-
tion, and has no powers except such as are conferred by the
order for his appointment and the course and practice of the
court. (*See authorities above cited.*)

II. A receiver can only maintain an action to recover
personal property, or the rents, issues and profits, or *choses
in action,* pending a suit by a creditor or some other person,
or after the court has judicially declared that said property,
&c., should be applied in payment, and directing the receiver,
if already appointed, to take charge of and collect the same ;
but the creditor must institute in his own name the suit to
remove the impediment in the way, before the property can
be applied.

III. The instrument of 30th March, 1850, was valid, and
gave validity to that clause in the assignment of 5th of
January, 1850, allowing the assigned property to be sold on
credit, and should be taken as a part and parcel of said
assignment. It is not inconsistent with it, but merely
explanatory of what might be deemed an obscure direction,
and does away with the idea of there being fraud on the face
of the instrument. It was executed and delivered before any
order for the appointment of a receiver ; he was not
appointed till 4th April, 1850. The assignor had a perfect
right to execute, and the assignee to receive said writing,
which was delivered the day it bears date. No receiver had
been appointed, and there is nothing in the Code authorizing
his title or lien to have relation back to a day anterior to the
day of its execution ; he could only acquire a right under
and from the date of the order appointing him. (2 *Barb. Ch.
Pr.,* 168, 9 ; 9 *Paige,* 377.)

Porter *against* Williams and Clark.

IV. Although the right of the receiver to the personal property, and rents and profits, became fixed by the order appointing him, and amounts to an equitable sequestration, yet for the purpose of enforcing that right the practice has always been, previous to the decision in 6 *Barb.*, 589, to require an assignment to the receiver, so as to vest the legal title really in him, and to require the tenants to attorn to him for the future rents, and he could not maintain an action at law till those requirements were fulfilled.

V. Another question in this case is, whether the clause in the assignment allowing the assignee to sell on credit makes it fraudulent and void on its face. This is the only ground raised by plaintiff, and upon which the court adjudged the assignment fraudulent. The case shows a full surrender of all the debtor's property to the assignee under and by virtue of the assignment, and his acceptance thereof and of its control until restrained by the court, and that he sold only for cash. In fact, the case *is* entirely free from any feature or badge of actual fraud. It is the well settled law of this state that a person by assignment may dispose of all his property liable to execution, and may therein give preference or priority to his creditors, and may select his own assignee without consulting any creditor, provided the assignee is a suitable and proper person; and there is no objection to Clark, the assignee in this case. (*Hyslop* v. *Clarke*, 14 *John.*, 458; *Austin* v. *Bell*, 20 *id.*, 442; *Grover* v. *Wakeman*, 4 *Paige*, 43; 11 *Wend.*, 189, *same case approved; Goodrich* v. *Downs*, 6 *Hill*, 438; *Webb* v. *Daggett*, 2 *Barb.*, 9.) The case now before the court makes it incumbent on the assignee, if he sells on credit, to convert the same into money, and he is personally liable to do so. Such an instrument is sustained as valid in *Whitney* v. *Krows*, 11 *Barb.*, 198 *per* HARRIS, J.

*John H. Reynolds* for the respondent.

I. No assignment to the receiver was necessary. None is provided for in the Code (*vide Code*, §§ 298, 299), and consequently the judge could not have ordered one made. In no case have the Revised Statutes, in making provisions for the appointment of receivers, required any assignment to be made; but they become, by the act of the court appointing them, vested with all the proper and necessary powers to enable them to sue and recover debts, demands, &c., &c. (2 *R. S.*, 462, §§ 41, 42; *id.*, 468, §§ 65, 66.)

II. The assignment by defendant Williams to Clark provides for the sale by the assigned property on credit, if the assignee thinks best. The assignment, therefore, as against creditors, was void on its face. This court having, during the past year, in several instances settled this principle of law, and affirmed the doctrine as laid down by Judge BRONSON, in *Barney* v. *Griffin* (2 *Comst.*, 365), no further argument on that point would be useful or proper.

III. The assignment being void on its face, the paper executed by defendant Williams, and bearing date 30th March, 1850, could in no way affect the assignment, because, 1. Williams, the assignor, had by the assignment fully and entirely parted with all his right, title and interest in this property. As against him that assignment was valid, and divested him of all interest in or control over the property. He could not, then, attempt to control Clark in his management of the assigned effects. He had no greater power or right to do so than a vendor of property in any other case. 2. The paper of 30th March, 1850, was at the most but an unauthorized direction by Williams to Clark. Clark was not a party to it, did not agree to be governed by, nor in any manner assent to it, or agree to regard it, and surely this court will not hold that an assignor, after assignment made, and while the assignee is proceeding under the assignment, can direct or control the assignee in his execution of the trust, and by a simple direction vary the terms of the

trust deed.  If the assignor is permitted to vary its terms in one particular, on the same principle he may in others. If he can at will revoke one of its provisions he may equally revoke all of them. (*See also Wakeman* v. *Grover*, 4 *Paige*, 42.)

WILLARD, J., delivered the opinion of the court.

The first question is whether a receiver, appointed by a justice of the supreme court under supplementary proceedings instituted by a judgment creditor, upon the return of executions unsatisfied, in pursuance of the provisions of the Code of 1849, §§ 292 to 298, can, after perfecting his appointment, maintain an action in his own name to set aside an assignment of real and personal property made by the judgment debtor, on the ground of fraud, without having first received from such debtor an assignment to himself as such receiver.

By § 298 of the Code of 1849 the receiver appointed under supplementary proceedings possesses the like authority as if the appointment were made by the court according to § 244.  By the last named section the court are authorized to appoint receivers and grant the other provisional remedies, according to the then prevalent practice.  The act of April 28th, 1845. (*Laws*, 90, 91), enacts that any receiver appointed by virtue of an order or decree of the court of chancery may take and hold real estate upon such trusts and for such purposes as the court may direct, subject to the further order or direction of the court; and the second section empowers receivers so appointed by an order or decree of the court of chancery to sue in their own name for any debt, claim or demand transferred to them, or to the possession or control of which they are entitled as such receivers.  The chancellor, in *Wilson* v. *Wilson* (1 *Barb. Ch. R.*, 594), thought the act of 1845 was not broad enough to transfer the title of real estate to the receiver, by the mere order of the court and without an actual conveyance from

the party to the suit in whom such legal title was vested. But I think that since the Code no such conveyance is necessary to vest the legal title in the receiver, and that real and personal property are in this respect placed upon the same footing. The sections before cited provide for the appointment of receivers of the property of the judgment debtor, &c. Sec. 464 enacts that the term "property" as used in the Code shall include "property real and personal," and §§ 462 and 463 define what is meant by "real property" and by "personal property." The first is declared to be coextensive with lands, tenements and hereditaments, and the other to include money, goods, chattels, things in action and evidences of debt.

Before the Code, it was settled that the order appointing a receiver, when the appointment was completed, vested in him all the property and effects of the debtor, subject to the order, without an assignment. (*Mann* v. *Pentz*, 2 *Sandf. Ch. R.*, 257; *Wilson* v. *Allen*, 6 *Barb.*, 542.) These cases speak only of personal property; and doubtless the real property did not before the Code pass by such order, and was only directed to be conveyed under peculiar circumstances. (*Scouton* v. *Bender*, 3 *How. Pr. R.*, 185; 6 *Barb.*, 602, *per* HARRIS, J.) But since the Code, I think the order has the like effect upon the debtor's real estate as upon his personal estate, and that the whole by force of the order becomes vested in the receiver when the appointment is completed. The language of the Code effectually removes the difficulty which the chancellor suggested in *Wilson* v. *Wilson* (*supra*). It puts real and personal property in the same category. The statute of frauds affords no objection to this view. It is there enacted (2 *R. S.*, 134, § 6) that no estate or interest in lands, &c., shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party, &c., or by his agent, &c. It was competent for the legislature to remove that impediment to conveyances, or to

declare what act or operation of law should work a transfer of title. They seem to have done so by giving a legislative definition to the word " property," so as to embrace real as well as personal property.

The receiver appointed under supplementary proceedings does not stand merely in the place of the debtor, but represents the creditors, and can thus impeach the fraudulent sales of the debtor. The assignment sought to be set aside in this case was good between the parties. The fraudulent grantor could not impeach his own grant. (*Osborne* v. *Moss*, 7 *John.*, 161 ; *Jackson* v. *Garnsey*, 16 *John.*, 189 ; *Jackson* v. *Cadwell*, 1 *Cow.*, 622 ; *Leach* v. *Kelsey*, 7 *Barb.*, 466 ; *Jewett* v. *Palmer*, 7 *John. Ch. Rep.*, 65 ; *Padgett* v. *Lawrence*, 10 *Paige*, 170 ; *De Mott* v. *Starkey*, 3 *Barb. Ch. Rep.*, 403.) But the receiver, succeeding to the rights of the debtor, represents other interests than those of the debtor. He comes in by the act of the law and not by the act of the party. Before the Revised Statutes it was held, in *Osborn* v. *Moss* (*supra*), that the personal representatives of the fraudulent grantor could not invalidate the grant ; and the reason was, that the statute renders the sale void only as against creditors and purchasers, and leaves it valid between the parties and their representatives. But now, as remarked by SAVAGE, Ch. J., in *Dox* v. *Backenstose* (12 *Wend.*, 543), under our statute, executors and administrators have a new character, and stand in a different relation from what they formerly did to the creditors of the deceased persons with whose estates they are entrusted. They are not now the mere representatives of their testator or intestate. They are constituted trustees, and the property in their hands is a fund to be disposed of in the best manner for the benefit of creditors. (*See* 2 *R. S.*, 78, § 8 ; *ib.*, 449, § 17, &c.) The same doctrine was affirmed in *Babcock* v. *Booth* (2 *Hill*, 181), and was approved by the chancellor, in *Brownell* v. *Curtis* (10 *Paige*, 210–218). Since executors and administrators have come to represent the rights of the creditors generally, they

have been allowed to impeach the conveyances of their testator or intestate, when fraudulent against creditors.

Upon the same principle the receiver of an insolvent corporation is allowed to question the fraudulent and illegal acts of the corporation. He represents both the creditors and the stockholders. (*Gillet* v. *Moody*, *3 Comst.*, 479 ; *Leavitt* v. *Palmer*, *ib.*, 19 ; *Brouwer* v. *Hill*, 1 *Sandf. S. C. R.*, 629 ; *Hyde* v. *Lynde*, 4 *Comst.*, 392.) The receiver is bound by the legal acts of the corporation. It is only those which are illegal which he can impeach.

The receiver appointed under the Code represents the interests of the creditors as well as those of the debtor. He is a trustee for all parties, and is bound to apply the effects of the debtor faithfully to the payment of the debts, according to their legal or equitable priorities ; and if anything remains, to restore it to the debtor or his grantee. He has no power to set aside legal and valid acts of the debtor ; but such as are illegal and forbidden by law he can successfully assail. These principles are legitimate deductions from the cases which have been cited, and they are carried out to their consequences in the Code of 1851, § 298, which forbids the appointment of more than one receiver for the same judgment debtor, though there may be separate proceedings in favor of different creditors. It shows that the receiver is a trustee for all.

The act which the receiver seeks to avoid in this case was an illegal act of the debtor. The object of the action is to set aside an assignment made by the debtor with intent, as is alleged, to defraud the creditor under whose judgment and execution the plaintiff was appointed receiver, and the other creditors of the assignor. Such conveyance was void at common law, and is expressly forbidden by the statute. (2 *R. S.*, 137, § 1.) It is void as against the creditors of the party making it, though good as between him and his grantee. The plaintiff, representing the interests of the creditors, has a right to invoke the aid of the court to set aside the

assignment. He stands, in this respect, in the same condition as the receiver of an insolvent corporation, or as an executor or administrator, and like them can assail the illegal and fraudulent acts of the debtor whose estate he is appointed to administer.

These views are greatly strengthened by the recent decision of the court of appeals in the case of *The Chautauque County Bank* v. *White* (2 *Seld.*, 236). The supreme court in the third district (*see* 6 *Barb.*, 589) held in that case, among other things, that a receiver in a creditor's suit could not take such a title in the real estate of the judgment debtor, even under an assignment made by the latter in pursuance of an order of the court, as to authorize the court to direct him to sell such real estate and apply the proceeds to the payment of the creditors having liens thereon, nor so to divest the judgment debtor of his title to the real estate as to prevent a judgment subsequently recovered against him from becoming a lien thereon. The court of appeals held the contrary on both those points. According to the decision of the supreme court the real estate still remained in the debtor, notwithstanding the order appointing a receiver, and notwithstanding an actual conveyance by the debtor to the receiver, in pursuance of the order of the court. This judgment was reversed. The order appointing the receiver in that case was made before the Code. The case is therefore in point to show that under the old practice the title passed to the receiver, under an assignment made in pursuance of an order of the court. The argument in favor of its passing, since the Code, is much stronger than it was before.

The assignment in this case was made by the defendant Williams to the defendant Clark on the 5th of January, 1850, in trust for the payment of the debts of the assignor according to an order of preference therein specified. It embraced all the real and personal property of the assignor, and it authorized the assignee " to sell and dispose of the same either at public or private sale, to such person or persons, for

such price or prices, and on such terms and conditions, and either for cash or credit, as in the judgment of the assignee may appear best," &c. In *Barney* v. *Griffin* (2 *Comst.*, 365), BRONSON, J., in giving the opinion of this court, said that an assignment by an insolvent debtor of his estate is fraudulent and void, when by the terms of the deed the trustees are authorized to sell the property on credit. It does not appear by the report that the whole court acquiesced in that position, and there were other grounds taken by the learned judge, and appearing on the face of that assignment, rendering it void, and upon which the other members of the court may have acted. This has led the superior court of New-York to question the *dictum* of Judge BRONSON. (*See* 4 *Sandf. S. C. R.*, 293.) But I understand this court in a subsequent case affirmed the principle above stated by BRONSON, and that it is no longer an open question in this court. The assignment must therefore be set aside, unless the subsequent assignment made by the assignor on the 30th of March, 1850, cured the defect.

The subsequent assignment was made after the rights of the creditor had attached, and recited the assignment of the 5th of January, and that doubts had arisen whether the authority to sell on credit did not vitiate the assignment, and proceeded to direct that the sale should be for cash only. It is believed that the assignor had divested himself of all control over the property by the assignment of the 5th of January, and that he could neither revoke nor alter it; and certainly not to the prejudice of a creditor whose lien on the property had attached by the institution of supplementary proceedings under the Code.

The judgment of the supreme court must be affirmed.

JOHNSON, J., gave no opinion.

Judgment affirmed.