ANDREW BOWEN *v.* REUBEN R. THRALL, GIDEON S. TABOR
AND AARON JOHNSON.

[IN CHANCERY.]

*Transfer of overdue note.　　Warranty deed.　　Relief against in-
cumbrances.*

A person taking an overdue bill or note takes it subject to the equities, affecting the
instrument itself, to which it is subject in the hands of the person from whom he
receives it.

In a contract for a warranty deed, a deed containing the usual covenants of seizin
and against incumbrances is intended.

Equity will not allow a grantor of real estate to recover the whole purchase money,
while there are incumbrances on land, which he is bound to discharge: the pur-
chaser will be permitted to retain of the purchase money sufficient to indemnify
him against the incumbrances, particularly if the grantor is insolvent, and there
is no adequate remedy on his covenants.

The orator purchased of the defendant J., an undivided half of a certain saw-mill,
&c., which J. agreed to convey to him by a warranty deed, containing the usual
covenants of seizin and against incumbrances. The deed given conveyed only
J.'s " right, title and interest in" the premises, and contained no covenant except
one to warrant and defend the " aforesaid premises." The premises were incum-
bered by a mortgage previously given by J., by virtue of which the mortgagee
subsequently took and held possession, and the defendants were endeavoring,
by an action at law, to collect a note given by the orator towards the purchase
money. *Held,* that the deed executed was not conformable to the contract, and
that the orator was entitled to an injunction against the collection of the note,
until the mortgage incumbrance was removed, and a deed given agreeable to the
contract.

APPEAL FROM THE COURT OF CHANCERY. A statement of
the facts, the object of the bill, and the decree of the court of
chancery, will be found in the opinion of the supreme court, which
after argument by

　　*A. L. Miner* for the orator,

and by

　　*Thrall & Smith* for the defendants,

was delivered, at the circuit session in June, by

　　ISHAM, J. The general object of this bill in chancery is to
obtain relief from the payment of a promissory note, executed to

Aaron Johnson or bearer, on the 30th of March 1840, and made payable on the first of April, 1843. The note is now sued at law in the name of Mr. Thrall. The chancellor decreed a perpetual injunction upon the further prosecution of the suit on that note. The case is now brought before this court by appeal, and the question arises whether, upon the facts existing in the case, that decree was properly made.

It is stated in the bill that this note is still the property of Mr. Johnson; that it was delivered by him to Mr. Tabor, for collection, and for no other object, and that for the same purpose, the note was delivered, by Tabor, to Thrall. Thrall, in his answer, admits that he has no personal interest in the note, and that he commenced the suit in his own name for collection, and for the benefit of Tabor, from whom he received it. So far, therefore, as Thrall is concerned, the note is subject to every defense that it would be if it had been prosecuted in the name of Tabor. Tabor, in his answer, denies that this note is the property of Johnson. He says that it was transferred to him by Johnson, as collateral security, for advances which he had, and which he thereafter was to make; and that, relying upon that security, he had advanced to Johnson about one-half of the amount of the note. He denies any knowledge of the contract or dealing of the parties, from which the note originated, or that any defense existed to it. He admits, however, that he received the note from Johnson, after it was over due, and that he delivered the note to Thrall for collection, and that, when collected, after the payment of his advances, the surplus belongs to Johnson. The same facts, in relation to the transfer of the note to Tabor, are substantially stated by Johnson, in his answer. The indefinite manner in which that matter is left in the several answers, as to the amount of those advances, the time when they were made, and of what they consisted, and the repeated declarations of Tabor, as proved by several witnesses, that he had no interest in the note, nor in the suit then pending upon it, and that the affairs of Johnson were deranged, and were placed in his hands for the purpose of arranging them, and removing from him the embarrassments they occasioned, leaves the matter doubtful, to say the least, whether the facts stated in the bill are not sufficiently proved. That question, as one of fact, however, does not become

very material in the case, as Tabor admits that the note came into his hands over-due. Under such circumstances the rule is the same in equity as at law, "that a person who takes a bill or note after it is due, takes it subject to all objections in respect of considera-tion or illegality, and of all equities affecting the instrument itself, to which it was liable in the hands of the person from whom he received it; provided the equity or defense arises out of the note or bill transaction." Chitty on Bills 245. Story on Bills, § 220. *Walbridge* v. *Kibbee,* 20 Vt. 5 43. *Robinson* v. *Lyman,* 10 Conn. 30. *DeMott* v. *Starkey,* 3 Barb. Ch. 403. *Burrough* v. *Moss,* 10 B. & Cres. 558. *Rothschild* v. *Corney,* 9 B. & Cres. 391. The fact, therefore, that the note passed into the hands of Tabor, and from him to Thrall, after it became due, renders it sub-ject to every defense, whether legal or equitable, which would be available between the original parties; the same, precisely, as if the note was now held and prosecuted by Aaron Johnson.

The whole subject of controversy is, therefore, resolved into the inquiry whether, as between the original parties to that note, the facts proved in this case will justify an application to a court of chancery for the relief for which the orator has prayed. On that subject, it appears that on the 30th of March, 1840, the orator contracted with the defendant Johnson for the purchase of one equal and undivided half of a saw-mill in Dorset, known as the "Markham Mill," together with a small tract of land adjoining, and that the note now in suit, with the two others which were paid as they became due, were given in payment for the property so purchased. It also appears that, at that time, these premises were, and had been from the 17th of June 1837, jointly owned by John-son and one Benoni Fisk, in equal and undivided moieties, and that they were also the owners of about fifty acres of land adjoining these premises, and that on the 17th of June, 1837, all these premises were mortgaged to Luman Markham, for the payment of about $378.33, which, with the interest upon it, was due at the time of the conveyance from Johnson to the complainant. That mortgage was afterwards transferred to J. & R. Vail & Co., who, since the 1st of April, 1845, have, as assignees of the mortgagee, been in possession of the mortgaged premises. Johnson, in his answer, admits the execution of the mortgage deed, its assignment to the

Bowen *v.* Thrall et als.

Vails, and their possession of the premises; but he denies the statement in the orator's bill, that the premises were to be conveyed by him under a warranty deed, with the covenants of seizin and against incumbrances. He states that he agreed only to convey his interest in the premises, or his right of redemption, and that he owned but an undivided half of the premises, which he agreed to, and did convey to the complainant, thus leaving the mortgage debt to be paid by the orator. That statement is a denial of the whole equity of the orator's bill, and if true, the complainant has no ground upon which to sustain this suit, for when real estate is conveyed, if the title fails, or if incumbrances rest upon the premises, there is no remedy at law or in equity, if there was no fraud in the sale, and the grantee has taken no covenants to secure his title, or protect himself against the incumbrances; *Abbott* v. *Allen*, 2 Johns. Ch. 522; *Gouverneur* v. *Elmondorf*, 5 Johns. Ch. 79. Under those circumstances, the orator would be bound to pay the note now sued at law, and the incumbrances upon the land. We are satisfied, however, that that was not the understanding of the parties. We can entertain no doubt that Johnson did agree to convey to the orator an undivided half of the premises, by a warranty deed, containing the usual covenants of seizin and against incumbrances. These are covenants which, under the form of conveyances in this state, are usually inserted in deeds of that character, and when an agreement is made for a warranty deed, a deed with these covenants would be intended. If such a deed had been made by Johnson to the orator, the mortgage debt now owned by the Vails, would be a claim to be paid by Johnson. That such was the understanding of the parties is evident from the testimony in the case. It could have been with no other idea that the orator paid the value of the premises, independent of that debt, or that Johnson inserted the covenant of warranty in his deed.* The

---

* The commencement of the deed was in the usual form of a bargain and sale; the premises conveyed were described as "all my right, title and interest that I have in the premises, privileges and appurtenances of the saw-mill," &c. The habendum clause was in the usual form, and then followed this covenant: "And I the said Aaron Johnson, do for myself, my heirs, executors and administrators, covenant to and with the said Andrew Bowen, his heirs and assigns, that I will warrant and defend the aforesaid premises to him and them, against all claims whatsoever," after which followed the *in test.* clause.

testimony of Lewis Curtis, who drew the deed, and Daniel Curtis, who was present when the deed was drawn, is sufficient to show that instructions were given, by both parties, to draw a deed of that character, and that such a deed was intended to have been drawn. The testimony of Lewis and Daniel Curtis, James Lyndon and William Albee, is full, in showing that the sum due on the mortgage debt was to be paid by Johnson, and that he relied on the debt due to him from Daniel Curtis, for that purpose, but was prevented from paying it in that manner by the failure of Daniel Curtis. That being the contract between the parties, the deed should have been drawn, with such covenants as would carry that intention into effect. It is obvious that the deed which was given, is not, in any sense, a fulfillment of that contract. The deed purports to convey, not an undivided half of the premises, but all Johnson's right, title and interest in the premises described. If we were to regard this as a deed purporting to convey the land itself, and the covenant of warranty as a security to the grantee for its title, it would not be a conveyance of the undivided half, but of the entirety—a conveyance of the whole lot. That construction the orator does not contend for in his bill. The effect of the deed, therefore, is to convey simply his right and title to the premises. If Johnson had any title or interest in the land, it passed by the deed. If he had none, the deed was of no value, for it conveys no interest whatever, and the covenant of warranty is of no practical benefit, as that is a security to the grantee for such an interest only, as the deed, in its premises, purports to convey; *Mills* v. *Catlin*, 22 Vt. 104. The legal effect of the deed, therefore, is that of a quit claim deed merely, leaving the mortgage debt now due to Vail & Co., as well as the note, now prosecuted by Thrall, to be paid by the orator. That result the parties did not intend, and against it the orator seeks relief. At law the orator is without adequate remedy, as the deed must there be enforced as it was drawn, and as the deed contains no covenant against incumbrances, the orator has no defense at law to that note. Courts of equity, however, will protect the rights of the parties, under that contract, and enforce it in the same manner, and to the same extent as if the deed had been drawn and executed as it should have been; 1 Story's Eq. 64 *g*; 2 do. § 790-1,

Whatever may be the rule at law, a court of equity will not permit a grantor to recover the entire purchase money, and leave unpaid incumbrances upon the land which he is under obligations to discharge. The purchaser has a right to retain so much of the purchase money as is sufficient to secure him against the incumbrances on land, particularly where the grantor is insolvent, and no adequate remedy can be had on his covenants. That doctrine was expressly ruled in the case of *Tourville* v. *Naish*, 3 P. Williams 307; *Sargent Maynard's Case*, 2 Freeman 1; 1 Vesey 88. The doctrine was also recognized by CH. KENT, in *Abbott* v. *Allen*, 2 Johns. Ch. 521. In the cases of *Christy* v. *Reynolds*, and *Todd* v. *Gallagher*, 16 Serg. & Rawle 258, 261, it was held, that "the discovery by the vendee, before payment, of incumbrances, is a valid defense in a suit at law, for the purchase money to the amount of the incumbrances." In that state they have no court of chancery, and therefore equitable principles are administered in their courts of law. As the incumbrance in this case much exceeds the amount of this note, we think it cannot be recovered from him, until that incumbrance is removed, and the title of the orator is made good, agreeable to this contract.

The decree of the chancellor, enjoining the suit at law, is affirmed. and also in relation to the costs at law and in equity.