GEORGE A. OSGOOD *et al.*, Receivers of the Columbian Insurance Company, Respondents, *v.* DAVID OGDEN, impleaded with others, Appellant.

SET-OFF. INSOLVENT CORPORATIONS. INSURANCE COMPANIES. REPRESENTATIVE CHARACTER OF RECEIVERS.

This is one of many actions by the parties plaintiffs, in their capacity as receivers of the Columbian Insurance company, which have upon one issue or another been brought to this court. The case of *Osgood* v. *Laytin*, decided at the June Term, 1867 (3 Keyes 521), settled the questions of the form of the action, the proper parties, and the liability of this defendant for the amount paid to him as a dividend by the company after insolvency, leaving to be determined only the question of his claim to set off, against that liability, his claims against the company for return premiums on certain policies, and damages for a loss on a policy of insurance issued by the company, and to have the balance found due him paid in full out of the funds in the receiver's hands, instead of sharing in the distribution of the assets in common with other creditors.

*Held*, that the claims of the defendant against the company could not be allowed as a set-off against the claim of the receivers in this action, for the reason, that in this action the receivers represent, not the company, but the creditors, who are the parties beneficially interested; hence the case is not brought within the statute in relation to set-offs, nor within the spirit of the decisions cited to sustain the defendant's claim.

The doctrine enunciated, recognizes fully the principle that a set-off will be allowed against the representative, in the capacity of trustee, etc., where it would be allowed against the principal, but the principal in this action being the creditors and not the company, and the defendant having no claims against the creditors which he could set off had the action been instituted by them instead of by the receivers on their behalf, he has none against their representatives in this suit.

The double character in which receivers act, as representatives, in some relations, of the company, and, in others, of the creditors of the company, is forcibly illustrated in this case.

THIS suit was brought by the receivers of an insolvent insurance company, against the appellant and several hundred defendants, all of whom were either stockholders or creditors of the corporation.

The object of the suit was two-fold: First, to recover from such of the defendants as were stockholders, certain sums received by them, individually, from the company, by way of dividend declared when it was insolvent, and to restrain

them from paying the same to any one else. Second, to restrain such of the defendants as were creditors, from prosecuting individual suits against the stockholders to recover such amounts.

Ogden, the appellant, at the time of the commencement of this suit, January 18, 1867, was both a stockholder and a creditor of the company. He had received, January 2, 1866, by way of dividend from the company, $304,50, which the respondents seek to recover. The company owed him $141.37 for return premiums on certain policies of insurance effected by him previously with it, and he claimed also $1,391.18 for damages on a policy of insurance issued by it. The loss under the latter occurred prior to January 1, 1866. The vessel arrived in port January 18, 1866. The respondents were appointed receivers January 23, 1866. A protest was made February 7, 1866, and filed with the receivers May 22, 1866. By the terms of the policy the loss was payable thirty days after filing of proofs.

The appellant, in his answer, claimed to have the total amount due him from the company ($1,532.41) set off against the amount claimed by the receivers ; and he further prayed judgment in his favor that the balance due him be decreed to be paid by the receivers out of the funds collected by them in this suit.

The case was referred to HAMILTON W. ROBINSON, to hear and determine. There was no dispute as to the facts. He disallowed both the set-off and counter-claim, and directed judgment for the respondents. Ogden appealed to the General Term, where the judgment was affirmed. The present appeal was then taken by him.

*Elbridge T. Gerry,* for the appellant.

I. The chief and principal error committed by the referee, and affirmed by the court below, arose from this suit being regarded by them as a statutory proceeding at law in behalf of the creditors, to recover a dividend fraudulently paid and received.

1. It was urged as principal ground of demurrer to the complaint, when this case was last before this court, that the suit was not maintainable as one at law under the statute, because there was no averment of fraud. But this court held, unanimously, that the suit was properly brought in equity, and that the complaint was not, therefore, within the objection urged; nor, for that reason, within the other objections of misjoinder of parties and causes of action. *Osgood* v. *Laytin*, 3 Transcript Appeals, 124.

2. However the Code may have assimilated the forms of legal proceedings, still the rules which govern, and the principles which form the basis of, legal and equitable actions, substantially remain as distinct as before.

II. Assume this suit to be (as the appellant insists) in equity. The rule then is that where a party sues in equity to compel another to bring into court moneys which he claims to be due him (or the person he represents), and the party sued does so, and at the same time, claims and proves that he is, in fact, a creditor, instead of a debtor of the party suing, equity will not only allow the fact proven as a set-off, but will decree the party suing to pay the party sued the balance due him out of the moneys so brought into court.

1. The principle here contended for exists independent of any statute. Lord ELDON said that " the Court of Chancery was in possession of it, as grounded upon principles of equity long before the law interfered." Lord MANSFIELD reasserted it also. *Ex parte Stephens*, 11 Vesey, Jr., 26; *Green* v. *Farmer*, 4 Burr, 2, 220.

(*a*) It is true, the general right of set-off was first introduced by statute into the banking law in 1705. But the principle was asserted in courts of equity long before, as not derived from, nor dependent on, any statutory enactment, but founded on the principles of the civil law. *Freeman* v. *Lomans*, 9 Hare, 116; Stat. 4 Anne, cap. 17, § 11; 11 Stat. at Large, 166; *Duncan* v. *Lyon*, 3 Johns. Ch., 359; *Whitaker* v. *Rush*, Ambler, 407; *Ex parte Deeze*, 1 Atk. 228.

(*b*) Indeed, long before the statute, Lord Chief Justice NORTH said, in 1675: " If there are accounts between two

'merchants, and one of them becomes bankrupt, the course is not to make the other to pay the whole that was originally intrusted to him, and to put him, for the recovery of what the bankrupt owes him, into the same condition with the rest of the creditors, but to make him pay that only which appears to be due to the bankrupt, on the foot of the account." *Anonymous*, 1 Modern, 215.

2. The application of this principle will be found in Gelston's case, which occurred in the old Court of Chancery, in this State in 1812. There the assignees of one Sands, a bankrupt, filed a bill to set aside a judgment obtained by Gelston prior to his discharge, on the ground that he had taken the body of the bankrupt in execution, and had afterward voluntarily released him. Gelston denied the allegations of the bill, and prayed that his judgment might be satisfied out of the proceeds of real estate of the bankrupt brought into court. The chancellor dismissed the bill against Gelston, and also denied his prayer for affirmative relief. On appeal by Gelston from the latter order it was unanimously reversed, and Gelston was paid the amount of his judgment out of the moneys so collected. (*Codwise* v. *Gelston*, 10 Johns. 509.)

3. So in a recent case in New Jersey, where a bank at the time of its failure held the money of the defendants which had been deposited in the bank, and the defendants held the promissory notes of the bank which they had obtained in good faith, the court held that in equity the bank was a debtor to the defendants for the money held on deposit and for the amount of their bills in the defendant's hands. And they said, " as applied to the settlement of a bankrupt or insolvent estate of an individual, there appears never to have been a question as to the equity of the rule. No distinction is apparent, and none has been suggested which should exempt insolvent corporations from the application of the same principle." (*Receivers* v. *Patterson Gas Light Company*, 3 Zabriskie, 283, 295 ; a strong case in point.)

4. It is a general rule also in equity, that where it has acquired jurisdiction over parties or funds for one purpose, it

retains that jurisdiction for all purposes. Hence a party suing in equity incurs by so doing the risk of adverse claims of an equitable nature, which may even reverse his position in the suit and make him in reality the defendant instead of the plaintiff.

(a) An apt illustration of this will be found in the omnibus suit of the New Haven railroad. There the company filed a bill to cancel certain forged certificates of stock, and was finally compelled in that suit to pay very heavy damages to many of the defendants who had bought these forgeries in good faith from an agent of the company. (*N. Y. & N. H. R. R. Co.* v. *Schuyler et al.*, 34 N. Y. 44, 45, 46, in point.)

(b) And as was well said by Judge MASON (in a case where a bill was filed to set aside a mortgage on the ground that it was given without authority, and the defendants in answer insisted on its validity and prayed a decree of sale, which was ordered): "The parties are before the court; they have submitted the question as to their mutual rights under it to its decision, and it would be an idle ceremony to compel the defendants to resort to a new suit in order to obtain that relief which the court had adjudged him entitled." (*Derwin* v. *Hatfield*, 4 Sandf. 416.)

5. The rule then in equity being too well settled to admit of question, that where a debtor to an insolvent is also his creditor and has in his possession money belonging to the insolvent, he is only bound to pay over to the insolvent the balance due him; it follows that where he brings this money into court under legal process he does not thereby lose the legal priority to it which its possession gave him, nor is he bound to relinquish such right and share *pro rata* in its distribution with the other creditors. (*Codwise* v. *Gelston*, 10 Johns. 510, *supra*; *McLaren* v. *Pennington*, 1 Paige, 112; *Ex parte Deeze*, 1 Ath. 228.)

6. True, in certain cases, under the old equity practice, a cross-bill was necessary to obtain affirmative relief, even where the set-off might be pleaded in bar. Now, however, a defendant may claim affirmative relief in his answer, and obtain judgment in his favor if he substantiate his claim.

(Code, §§ 149, 263, 274; *Vassear* v. *Livingston*, 3 Kern. 248.)

(*a*) This was done in the New Haven Railroad Omnibus suit, already referred to, which was brought since the passage of the Code.

(*b*) And the referee seems to have conceded this, even in his view of the case.

III. The next objection of the referee, that the appellant is precluded from offsetting his claims against the company in this suit, and from obtaining affirmative relief, because the plaintiffs are receivers of the company, and sue only in a representative capacity, is equally untenable.

1. Upon a bill filed in the old Court of Chancery by a creditor against the trustees of a bank, the charter of which has been dissolved under the statute, the chancellor said: " The trustees have all the rights which were vested in the corporation at the moment of its dissolution, and the complainant can make any defense to an action brought against him by the trustees, which he might have made against a suit brought by the corporation, had it continued in existence. In relation to the set-off, there can be no doubt of his equitable right to be allowed for any demand which he had against the bank at the time of the repeal of its charter." (*McLaren* v. *Pennington*, 1 Paige, 112.)

2. In Miller's case, against the Receivers of the Franklin Bank, Miller had a deposit in the bank, in his name, as public administrator. He also held $1,150 of the bills of the bank, drawn from the bank on his account as public administrator. The bank had, at the same time, a claim against Miller as an individual, secured upon real estate. He claimed to set off the notes held by him and his deposit, as public administrator, against his individual debt to the bank. The only question appears to have been, whether the debts were mutual, one being in his own right and other as public administrator. The court allowed the claim to set off both the deposit and the notes. (*Miller* v. *Receivers of Franklin Bank*, 1 Paige, 444.)

3. Now, a receiver is simply an officer of the court,

invested by his appointment with the collection and distribution of the assets of a corporation rendered incompetent by insolvency or other legal disability to administer those assets. He is not, as supposed by the referee, the mere representative of, or trustee for, the creditors alone. (*Hutchinson* v. *Lord Masserene*, 2 Ball & Beatty, 55; *Davis* v. *Marlborough*, 2 Swanst., 118.; *Curtis* v. *Leavitt*, 15 N. Y. 1.)

(*a*) It is very true that he represents the creditors; but he also represents the stockholders and all connected with the company itself. *Aliter*, he could not maintain a suit like the present where he proceeds against certain creditors to restrain their suing stockholders, as well as against the stockholders.

(*b*) And the proposition is perfectly untenable, that he at one time sues as representing the creditors only; at another, the stockholders; at another, the court. When he sues as receiver, he exercises in so doing every function of his office necessary to sustain his capacity to sue, and right to recover, against which every legal or equitable objection may be urged.

4. Now, the receivers could have sued the appellant, individually, under the statute, for assets paid him by mistake by way of dividend. So the company, had it been solvent, could have sued any one of its stockholders for money so paid. The right of action then existed, whether sought to to be asserted by the company (no longer vital), or by the receivers as its sole representatives.

(*a*) The statute expressly authorizes the receivers to sue at law. They required no statute to enable them to sue in equity, as trustees. (Law of 1858, chap. 314, § 2, p. 506; 3 R. S., 5th ed., 226; *Talmage* v. *Pell*, 3 Seld. 328; *Pence* v. *Hawley*, I Barb. Ch. 122; *Nathan* v. *Whitlock*, 9 Paige, 152.)

(*b*) The company unquestionably could sue at law any one of its stockholders who had received a dividend improperly or by mistake; and the receivers sue in right of the corporation. (*Utica Bank* v. *Van Gelson*, 18 Johns. 485; *Leavitt* v. *Yates*, 4 Edw. Ch. 134.)

5. But an express statute authorizes the allowance of the offset in cases like the present.

(*a*) This statute provides that " if the plaintiff be a trustee for any other, or if the suit be in the name of a plaintiff who has no real interest in the contract upon which the suit is founded; so much of a demand, existing against those whom the plaintiff represents, or for whose benefit the action is brought, may be set off as will satisfy the plaintiff's debt, if the same might have been set off in an action brought by those beneficially interested." (2 R. S. 354-5, § 12, subd. 10; 3 R. S., 5th ed., p. 635.)

(*b*) In construing this statute, the Superior Court held "that the maker of a promissory note held by a corporation, and, on the insolvency of the corporation, passing to the receiver thereof, has the same right of set-off in the hands of the receiver which he would have in the hands of the corporation itself."

WOODRUFF, J., said, " There is much ground for saying, that, within the meaning of this provision, the present plaintiff represents the insolvent corporation. He sues in right of such corporation. By virtue of his appointment he succeeded to the rights of such corporation, and he enforces those rights without any real interest in the contract upon which the suit is founded. He answers literally the description of the statute, being ' a trustee for another.' In this view of the statute, the claim of the defendant being one which could be set off if the company were plaintiff, it may be set off as against the receiver." (*Berry, Receiver, etc.*, v. *Brett*, 6 Bosw. 672, 673.)

(*c*) So, where moneys were borrowed from a fire insurance company on mortgage, in order to erect a building on the mortgaged premises, and the building when erected was insured in the same company, and then destroyed by fire; it was held that in proceedings by the receivers of the company (it having become insolvent), to enforce the mortgage, the loss by fire was allowable as set-off in equity. (*In re The Globe Insurance Co.*, 2 Edw. Ch. 622.)

(*d*) So, in New Jersey, in a case already cited, the same

doctrine was sustained, and a debtor to an insolvent corporation, on being sued by its receivers, was allowed to offset a claim he had against the corporation. (*Receivers, etc.,* v. *Paterson Gas Light Company,* 3 Zabriskie, 283.)

IV. The further objection of the referee to the allowance of the appellant's claim, "that it is not of the same character, nor due and payable in the same right, as that claimed by the plaintiffs," is also untenable.

1. The statute provides, "where mutual credit has been given by a debtor and any other person, or mutual debts have subsisted between such debtor and any other person, the trustees may set off such credit or debt, and pay the proportion, or receive the balance due." (2 R. S., 47, § 36; id. 355, § 15.)

2. Although in its terms permissive, this provision was intended to be mandatory upon the requisition of either party, and embraces all cases of debts actually due at the time of the appointment of the receivers to and from parties in the same capacity. They are "mutually subsisting debts" — that is, they subsist or exist in favor of each party against the other. (*Matter of Van Allen,* 37 Barb. 228, 229; *Murray* v. *Toland,* 3 Johns. Ch. 569; and *Dale* v. *Cooke,* 4 id. 11, as to what a "mutual debt" is.)

3. Now, as to the appellant, these were clearly mutual debts, within the statute and the adjudged cases.

(*a*) The loss insured against happened before the receivers were appointed. The money here sought to be by them recovered, came into his hands before they were appointed.

(*b*) The amount of the loss was settled by the provisions of the policy before this suit was brought. That amount is, therefore, definite and certain, and is so admitted to be on this trial.

(*c*) The fact that the proofs of loss were not filed until after the receivers were appointed, makes no difference. That only affected the time of payment.

The Court of Appeals held, in regard to these very receivers, that a loss occurring before bankruptcy is within the statute, although the loss be not adjusted till after the

bankruptcy, and although no extended time of payment be asked or formally given. (*Osgood* v. *DeGroot*, 36 N. Y. 348; affirming Holbrook's case, in 6 Paige, 220.)

The Superior Court had previously held that the maker of a promissory note held by an insolvent corporation, which did not become payable until after the receiver was appointed, could still offset it. (*Berry, Receiver,* v. *Brett,* 6 Bosw., 627, 638, in point.)

This merely affirmed the doctrine so plainly drawn by Chancellor WALWORTH, when he said: "In the case of Miller, this court decided that any equitable offset which the debtor had at the time the bank stopped payment, was not altered by the appointment of a receiver. It makes no difference whether the debt of the bank was then payable or has since become due." (*In re Receiver of Middle Dist. Bank,* 1 Paige, 585.)

The principle was most admirably illustrated and stated by the Supreme Court of New Jersey, in a case already cited. "The simple state of the case is, that the bank, at the time of its failure, held the money of the defendants, which has been deposited in the bank, and that the defendants held the promissory notes of the bank which they had obtained in good faith, and in equity the bank was a debtor to the defendants for the money held on deposit, and for the amount of their bills in the defendant's hands. As applied to the settlement of a bankrupt or insolvent estate of an individual, there appears never to have been a question as to the equity of the rule as above stated. No distinction is apparent, and none has been suggested, which should exempt insolvent corporations from the application of the same principles. * * * I am of opinion, both upon principle and upon authority, that the debtor of an insolvent corporation loses none of his rights by the act of insolvency; that he has the same equitable right of set-off against the receivers that he had against the corporation at the time of its insolvency; and, consequently, that a debtor of the bank, whether his indebtedness was actually accrued or not at the time of the insolvency, may in equity set-off against his debt either a

deposit in the bank or bills of the bank *bona fide* received by him before the failure of the bank." (*Receivers* v. *Patterson Gas Light Co., supra.*)

4. And it is absurd to insist that debts or credits, to be available as off-sets in any case, must arise out of the same transaction.

·. (*a*) As already shown, that certainly is not the rule in equity.

(*b*) The statute cited contains no such requirement. Its provisions are satisfied, if such debts or credits are "mutual" — that is, "reciprocal." (2 R. S. 47, § 36.)

V. Equally untenable is the objection raised by the learned counsel for the respondents to the allowance of the off-set, "because the statute subjects the appellant to an individual liability for the amount of this dividend to the creditors of the company; and this action is brought by the receivers as representatives of the creditors, to enforce that liability."

1. The language of that statute is as follows: "No dividend shall ever be made by any company incorporated under this act, when its capital stock is impaired, or when the making of such dividend will have the effect of impairing its capital stock; and any dividend so made shall subject each of the stockholders receiving the same to an individual liability to the creditors of said company, to the extent of such dividend received by him." (Laws of 1849, chap. 308; § 20, as amended by Laws of 1857, chap. 38, § 1; 4 Edmonds' Stat. at Large, 210, § 20.)

2. Its object was, where a company had become insolvent, and its capital had been paid away in dividends, to enable its creditors, in the absence of any trustee or receiver to represent them, to sue the recipients of this money personally. In other words, it was a special right of action, created and conferred by statute on the creditors. ··

3. But even this statute does not authorize a recovery, as of course; nor where, as in the present case, the recipient of the dividend was himself a creditor, does it preclude him from first satisfying his own claim out of the funds of his debtor which have thus come into his possession.

4. It certainly is a novel theory, not sanctioned by law or equity, nor warranted by precedent, that, where money of the debtor comes into the hands of the creditor (even by mistake), on the subsequent insolvency of the debtor, the creditor is bound to pay over all the money so received by him, and share, *pro rata* with the other creditors, in a common fund.

5. But the right of action is conferred by this statute (which, being *quasi* penal, is to be strictly construed) on the creditors alone. A suit under it could only be prosecuted by them collectively or by one *qui tam*. In any such suit every equitable set-off would be available. (*Osgood* v. *Laytin, supra; Geery* v. *N. Y. and Liverpool U. S. M. S. S. Co.,* 12 Abb. Pr. 286.)

6. By the appointment of the receivers the right to sue under this statute ceased; and the design and object of the other statutes (*supra, points III and IV,*) was to continue this right of set-off in suits brought by receivers. (2 R. S. 354, 355, § 12, subdivision 10; 3 id. [5th ed.] 635.)

VI. Nor is the objection to the allowance of this claim of the appellant "that it is inequitable" well taken.

1. Ogden, although a creditor of the company for a larger amount than that received by him as a dividend is sued by the "representatives of his fellow creditors" to compel him to pay over this small amount in which he as creditor has also an interest.

2. By forcing him into court, the receivers assumed the risk of adverse claims, and Gelston's case (*supra*) entitles him to affirmative relief out of the fund they have collected.

3. As well might it be claimed that the judgment of this court in the New Haven Railroad Omnibus suit was inequitable when having sued, and successfully, some defendants, the company was decreed to pay others damages; so that pecuniarily it was not greatly benefited by the action. Yet had that action been prosecuted by receivers of the company the result would have been the same.

VII. The judgment should be reversed, and there being

no dispute of fact in the case, judgment awarded in favor of the appellant substantially as stated, with costs.

*Thomas G. Shearman,* for the respondents.

I. None of the defendant's claims can be set off against the receiver's demand in this action, for the reason that they are not claims against the receivers in the capacity in which they bring this action.

1. It is an obvious dictate of common sense, and an old rule of equity, as well as an express requirement of the statute, that a set off should be due from the same person, and in the same right, as the person to whom and the right under which the demand of the complaint is due. (2 R. S. 354, § 18; *Dudley* v. *Griswold,* 2 Bradf. 24; *Mollan* v. *Griffith,* 3 Paige, 402; *Grew* v. *Burditt,* 9 Pick. 265; *Snow* v. *Conant,* 8 Verm. 308; *Medlicot* v. *Bowes,* 1 Ves. 207; *Whitaker* v. *Rush,* Ambler, 407.)

2. The plaintiffs' demand is one which they have purely as representatives of the creditors of the insurance company. The company itself never had any right to sue for these dividends, which it voluntarily paid. The stockholders themselves had no such right. There is nothing in the complaint which shows that the dividend was paid by mistake, and as it was paid *pro rata* to the stockholders, it was not a fraud upon any of them. If the receivers had not sued on behalf of the creditors and in their right, this action could not have been sustained. It has been so adjudged, where a receiver sought to maintain such an action for the benefit of stockholders who had not received their share. (*Butterworth* v. *O'Brien,* 39 Barb. 192; see the statute, 4 Edm. Stat. 210, § 20.)

3. It is true that the receivers represent the company as well as its creditors; but that does not oblige them always to act in both capacities at once. A receiver in supplementary proceedings represents the judgment debtor for some purposes, yet he may sue the debtor himself on behalf of creditors (*Porter* v. *Williams,* 9 N. Y. 149; Laws 1858, p.

506). It is obvious that in such cases, the debtor could not set off a debt due from himself, nor defend on the theory that it was merely his own representative, his other self, who was suing him.

4. While the plaintiffs sue only as trustees for the creditors of the company, the defendants' offsets are, if available at all, only available against them as trustees for the company. This is obvious. The creditors never owed the defendant a cent. If they had brought this action in their own names, he would not have thought of such a thing as setting off against them his claims against their debtors. But, because they sue through the medium of trustees, who happen to be at the same time trustees for the company also, for other purposes, he imagines it possible to succeed in an attempt which would otherwise be too absurd to be thought of. It is as though Mr. Curtiss, being executor for Smith and for Jones, respectively, should be met in action brought by him upon a note due Smith's estate by a counter claim founded upon a note due from Jones.

5. This case differs materially from all others that can be referred to, in which a set off has been allowed. In every such case the claim of the receiver or assignee was derived from the insolvent person or corporation over whose estate he was appointed. In this case it is not.

6. The correctness of this theory is proved by the language of the statute upon which the action is founded. That statute provides that every stockholder receiving a dividend impairing the capital stock, shall be subject "to an individual liability to the creditors of said company to the extent of such dividend received by him." (4 Edmonds' Stat., 210 ; Laws 1849, chap. 308, § 20.)

7. It is upon this statute that the action is brought. The complaint pursues the exact language of the statute. There was no occasion to refer to the statute in the complaint. Such references are not proper under the Code. (*Yertore* v. *Wiswall*, 16 How. 8; *Goelet* v. *Cowdrey*, 1 Duer, 132.)

8. Great injustice would be done to the creditors by allowing this set-off. Some of them had commenced an

action in their own names, when they were restrained from proceeding by the receivers, who claimed that they were better able to conduct the suit for the general benefit of the creditors. If the receivers cannot sue upon these claims without submitting to set-offs, then they cannot secure to the creditors in general the same advantages which the latter might have secured by suing themselves; and the courts have done great injustice to the creditors by putting the conduct of their suit under the exclusive charge of parties who cannot secure as favorable a result as the creditors could, if suing in their own names.

II. Even if the plaintiff's claim were derived from the insurance company, those set-offs pleaded by the defendant which became due after the appointment of a receiver, would be inadmissible.

1. It is abundantly settled that, apart from the statutes concerning insolvent debtors and corporations, a claim falling due after the receiver's appointment could not be set off against a claim transferred to him, and falling due at an earlier date. (*Myers* v. *Davis*, 22 N. Y. 489; *Hicks* v. *McGrorty*, 2 Duer, 295; *Beckwith* v. *Union Bank*, 4 Sandf. 604; 9 N. Y. 211; *Wells* v. *Stewart*, 3 Barb. 40; see *Osgood* v. *De Groot*, 36 N. Y. 350.)

2. These statutes do not help the defendant. Here were neither mutual debits nor mutual credits. The company never gave the defendant any credit in paying this dividend. It did not charge him with it, nor claim or expect to recover it back. He never was indebted to the company for the amount, until, at any rate, it had been demanded back. The defendant's offset certainly cannot be allowed under the Code, the statute of set-offs, or the laws as to receivers.

3. The decision in *Osgood* v. *De Groot* (36 N. Y. 348), which is relied upon by the appellant, does not apply to such a case as this. All that was adjudged there was, that one who owed the premium upon a policy of insurance might set off a loss under that very policy in an action by receivers for such premium, notwithstanding the proofs of loss were not served until after the receiver's appointment

was completed. The decision is limited to that class of cases by the opinion of the court itself; and the Superior Court of this city, in an opinion recently delivered by the chief justice (*Pardo* v. *Osgood*, not reported), has conclusively shown that the decision in *Osgood* v. *De Groot* ought not to be extended by implication to cases of a different class.

4. The loss claimed upon the "Dreadnought," constituting the larger part of the defendant's counterclaim, was not due until after the receivers were appointed. Though the vessel was injured before that date, the proof of loss, which was a condition precedent to any recovery, was not made until long afterward.

III. The fact that this is a suit in equity makes no difference in respect to any of the foregoing propositions.

1. All actions under the Code of Procedure are as much equitable as legal; and, therefore, the principles laid down in any decision, whatever the action would have been called under the old practice, are now applicable to all actions. (*New York Central Ins. Co.* v. *National, etc., Ins. Co.*, 14 N. Y. 85; *Phillips* v. *Gorham*, 17 id. 270; *Barlow* v. *Scott*, 24 id. 40.)

2. The cases which we have already cited from chancery reports, sustain all the propositions for which we have referred to common law authorities.

3. There is no equitable principle by which a debt due from this company can be set off against a demand enuring to its creditors. If by any technicality such a wrong were possible at common law, it would certainly not be tolerated in equity.

IV. The judgment entered upon the decision of the referee was right and should be affirmed.

BACON, J. The case of *Osgood* v. *Laytin*, decided by this court in June 1867, disposed of all questions touching the form of this action, the proper parties to it, and the necessary allegations to sustain the cause of action. The liability of the defendant to refund the sum which he had wrongfully received as a stockholder in the Columbian Insurance com-

pany, was also determined in that case. The liability thus incurred by the defendant was one which, by the statute, accrued to the benefit of the creditors of the insurance company unlawfully declaring and paying the dividend; but inasmuch as it was to the creditors generally, and not to individual creditors, it was further held, that no one individual creditor could maintain an action against an individual stockholder for the money thus illegally distributed to him, and that the action should be commenced by some party representing all the creditors. Several creditors who had commenced suits to recover the money thus improperly paid and received, were accordingly restrained by injunction from any further proceeding, and this suit was thereupon further prosecuted, and the only question which now arises, and is presented for adjudication, is the question of set-off or counter-claim set up in the answer of the defendant.

There are two items of set-off which the defendant claims to be allowed. The first is the sum of $135.19, consisting of return premiums due to the defendant from the Columbian Insurance company, and the other is the sum of $1,391.10, arising out of a claim against the company for a loss upon the ship Dreadnought, insured by the company, but where the proofs were not made, nor did the liability to pay occur until after the insolvency of the company had been declared, and receivers of its effects had been appointed. The referee held and decided, as matter of law, that neither of these claims constituted any defense to the claim of the plaintiff in the action, either by way of set-off, counter-claim or otherwise, and he consequently disallowed them, and rendered judgment for the sum demanded in the complaint.

I think the conclusion of the referee is right, and substantially upon the ground indicated in his opinion, accompanying the report, that the claims set up on behalf of the defendant, are not claims against the receivers in the capacity in which they bring this action. The counsel for the defendant invokes in his behalf, the doctrine of equitable set-off, which exists where a party prosecuted has a claim, not indeed personally against the party prosecuting, but against

another party, who is represented by the plaintiff in the suit, and who obtains his right to appear as plaintiff, either by voluntary appointment on the order of some court representing such party, as trustee, assignee, or in some other capacity. In such cases it is well settled that a set-off will be allowed. In the old Court of Chancery it was determined that the trustees of an insolvent corporation had all the rights which were vested in the corporation at the moment of its dissolution, and any defense could be made by a defendant to an action by the trustees, which could have been made to a suit brought against him by the corporation had it continued in existence; and therefore in respect to a set-off there was no doubt of his equitable right to be allowed for any demands which be had against the corporation at the time of its dissolution. (*McLaren* v. *Pennington*, 1 Pai. 102.)

Indeed the provision of the statute in relation to set-offs, is sufficiently broad to permit a defendant to avail himself of such a claim by way of set-off. For it is provided (2 R. S. 354, § 39, sub. 10), that if the plaintiff be a trustee of any other, or if the suit be in the name of a plaintiff who has no real interest in the contract on which the suit is founded, so much of a demand existing against those whom the plaintiff represents, or for whose benefit the action is brought, may be set off as will satisfy the plaintiff's debt, if the same might have been set off in an action brought by those beneficially interested.

All this being conceded, and the rule established by the statute being recognized, the inquiry still remains, whom do the plaintiffs represent in this suit, and for whose benefit, and on whose behalf, is this action prosecuted, and the recovery sought?

The answer to this question is, I think, very manifest, to wit, that in this suit, *quoad* the parties and the subject-matter of it, they represent the creditors of the insolvent corporation and not the corporation itself. It is clear, and is well established by the authorities, that receivers have, so to speak, a double character, and while in some aspects, and as respects

certain interests, they represent solely the corporation in whose legal shoes they stand, as to others they represent the creditors, and them alone. Thus in *Porter* v. *Williams* (9 N. Y. 142), this court declared that a receiver appointed by the court in proceedings supplementary to execution, does not stand merely in the place of the judgment debtor, but represents the creditors, and the point was held in that case that he could maintain a suit even against the very party he thus in part represented, to wit, the debtor himself, to set aside an assignment made by such debtor in fraud of his creditors. The court, in the opinion, say, that " the plaintiff, representing the interests of the creditors, has a right to invoke the aid of the court to set aside the assignment. He stands in this respect in the same condition as the receiver of an insolvent corporation, or as an executor or administrator, and like them can assail the illegal and fraudulent acts of the debtor whose estate he has been appointed to administer."

In the case cited, the debtor himself could never have been heard to question his assignment, for however fraudulent as to creditors, it was good between the immediate parties ; and so in this case, the insurance company could have maintained no suit to recover back the dividends they had voluntarily, but in known violation of law, paid to its stockholders. The receivers, as representing the corporation, could have maintained no such suit, and it is only, I conceive, as representing the creditors, and asserting a claim on their behalf against the fraudulent act of the corporation in paying, and the unauthorized act of the stockholder in receiving, that the plaintiffs have any *status* in court that will enable them to recover.

The set-offs claimed by the defendant, are only available, and can only be set up against the plaintiffs as trustees of the insurance company, not as the trustees and representatives of the creditors. They owed the defendant nothing, and if the suit had been in their names, it is clear that these demands could never have been pleaded as a defense or set-off in such an action. Having been enjoined from prosecuting suits on their own behalf to enforce the remedy the

statute gave them, it would be a great hardship upon them to hold, that as the result of that intervention they are in a much worse condition than they would have been if the court had allowed their own actions to proceed. For if these set-offs can be made available in the suit presented by the receivers, it is obvious that the result will be much less favorable to the creditors than if they had been suffered to prosecute their own actions.

The sensible and legal view of this action and the results flowing from it, is, I think, taken by the referee, that inasmuch as the acts for which this recovery is sought were frauds upon the creditors of the insolvent corporation, and the reparation sought is the restoration of these improperly abstracted funds for their benefit, the action is brought, and is only to be maintained in the right of the creditors, and in this specific action the plaintiffs represent the creditors only. The claims advanced by the defendant grow out of transactions entirely independent of the matter in respect to which this action is prosecuted—they are not between the same parties, nor payable in the same right, nor in respect to them are the plaintiffs trustees or representatives of the body against which these claims exist.

The defendant must restore the trust funds received in violation of law and improperly withheld, and then he will be in a position to claim as a creditor of the company a participation in common with the other creditors, in a fund realized and secured for their common benefit, but I apprehend, not till then.

The judgment should be affirmed.

Judgment affirmed.