HENRY W. GARDNER *et al.*

*v.*

THE COMMERCIAL NATIONAL BANK OF PROVIDENCE.

*Filed at Ottawa May 18, 1880.*

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—*by what law determined as to its validity.* The validity of a deed of assignment of property, although executed in another State, so far as it attempts to convey real estate situate in this State, must be determined by the laws of this State.

2. SAME—*when fraudulent as to creditors.* The placing of property in the hands of an assignee for any other purpose than to distribute it or its proceeds among creditors, is fraudulent and void as to creditors. If made to procure time or for the benefit of the assignor, it is fraudulent; and when the assignor has, or thinks he has more property than is necessary to pay his debts, the assignment can only be presumed to be intended for his own benefit, for in that event he only is to be profited.

3. A clause in an assignment for the benefit of creditors, authorizing the assignee to carry on the business of the assignor for such time as the assignee may deem necessary to prevent shrinkage and loss, and closing out and liquidating the same to the best advantage, where the deed recites that the assignor has property sufficient to pay three times what he owes, together with a clause that the assignee may make, assign, endorse and guarantee any and all bills of exchange and promissory notes or other paper for any new indebtedness or liability that may be contracted in carrying on the business, and to lease or mortgage the real estate, etc., unless compelled sooner to close upon the request of a majority of the creditors, clearly vests power in the assignee to hinder and delay creditors and renders the assignment fraudulent.

4. To make such a deed valid the debtor's property must be immediately and without restriction transferred to the assignee with a general authority to him to receive, hold and dispose of it for the equal benefit of all the creditors in the order of preference, if any.

5. It has been held by this court that a clause in an assignment authorizing the sale of the assigned property on a credit, renders the same void, as delaying creditors. The same principle applies with equal force to a clause authorizing the assignee to hold the property and continue the business until new debts are contracted, and then to mortgage the assigned property to secure their payment or to sell the same and devote the proceeds to their payment.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

The Commercial National Bank of Providence, Rhode Island, sued out a writ of attachment againt Davis, Towne, Tew and Sackett, copartners, under the firm name of Sackett, Davis & Co., which was levied on certain real estate, the legal title whereof was in Sackett.

Henry W. Gardner, Lodowick Brayton and Joseph B. Matthewson interpleaded, claiming that they were the owners of the attached property as trustees, etc. To this there was an answer denying that they were such owners.

By agreement of parties the cause was submitted for trial on the interpleaders.

Judgment was rendered in favor of the bank and against the parties claiming as trustees, and as such interpleading; and, thereupon, they appealed to this court. They claimed under the following deed of assignment, which was read in evidence on the trial:

"Whereas, the said Sackett, Davis & Co. are indebted to divers persons in divers sums of money, and their assets, although amounting in value to about three times their said indebtedness, can not immediately be made available for the payment of the same, as their said indebtedness shall from time to time mature; and whereas, the said parties are desirous of equally securing and paying all their said indebtedness by the conveyance of all their properties to the said parties of

the second part in trust, as hereinafter provided, which trust the said parties of the second part do by these presents accept.

"And, whereas, the best interests of the creditors may require that the jewelry business in which the said Sackett, Davis & Co. have been hitherto engaged, should be for some period continued by the said trustees, and by them gradually discontinued and closed out.

" Therefore, said parties of the first part, in consideration of the premises and of the trusts hereinafter set forth, and of one dollar, convey, etc., to the parties of the second part, the survivor or survivors of them, etc., all the real and personal estate of which the parties of the first part or any or either of them are seized or possessed, or to which they or any of them are entitled, or have any interest in as copartners or otherwise, except such property as is exempt from attachment by law. Upon the following trusts: They shall take possession of all the property hereby conveyed, and shall have power to invest, reinvest and change investments of the same, and to manage, act and deal with said property absolutely in their uncontrolled discretion, as they may judge for the best interest of all the creditors. They shall have free, full and uncontrolled power, in their discretion, to carry on the said jewelry business of the parties of the first part, for such time as the said trustees may deem for the best interests of the creditors and necessary for the purpose of preventing shrinkage and loss, and of closing out and of liquidating the same to the best advantage; and therein to draw, make, sign, indorse and guarantee any and all bills of exchange, promissory notes or other commercial paper, as well in renewal or extension of any commercial paper on which the said parties of the first part are now liable, in any form, or for any other existing debts or liability of the said parties of the first part, or for any new indebtedness or liability which may be contracted in so carrying on said business: *Provided, however,* that the foregoing authority to carry on said jewelry business, for the purposes above declared, shall forthwith cease and determine

whenever a majority in amount of the creditors of said parties of the first part shall so direct the said trustees. They shall have free, full and uncontrolled power, in their discretion, to sell any and all of the real property hereby conveyed, and to sign, seal, acknowledge and deliver any deed or deeds, conveyance or conveyances, of such real property from time to time as they may judge best, and so as to pass the fee thereof, and with or without warranties, as they may deem best, and in like manner to lease the same upon such terms as they may see fit, or to mortgage any and all of said real property and to sell and transfer, pledge or mortgage, any and all of the personal property hereby conveyed; to settle and compound for any debts or other choses in action held in trust under this indenture, and to give good and sufficient receipts, acquittances and discharges for the same; and the said parties of the first part hereby declare that the receipt of the said trustees for any rent, interests, dividends or other moneys whatsoever shall be a full acquittance and discharge for the same.

"And the said parties of the first part hereby direct the said trustees,—after paying all taxes and assessments upon said trust property, and for all repairs and improvements they may make or cause to be made of or upon the same, and all expenses of managing said property, including the premiums for such insurance upon the insurable property hereby conveyed as the said trustees may keep and maintain, and after reserving to themselves a reasonable compensation for their services hereunder, and paying in full the wages due from the said parties of the first part to all persons who have performed labor within six months previous to the date hereof, not exceeding one hundred dollars to any one person,—to retire all of the said indebtedness and liabilities of the said parties of the first part, including such as may be contracted by said trustees in carrying on the said jewelry business or otherwise, in carrying out the provisions of this indenture, as rapidly as, in their opinion, it can judiciously be done out of the profits, income and revenues of the jewelry business and any invest-

ments of said trust property, and by the sale, pledge or mortgage of such of the real and personal property held in trust under this deed, as they may think desirable, and in so doing to make such dividends or *pro rata* payments on account of all said indebtedness and liabilities, from time to time, as the said trustees may deem prudent and for the best interests of all the creditors; and as rapidly as in the opinion of said trustees it can judiciously be done, to convert the whole of the property hereby conveyed, or so much thereof as may be necessary, into money, and apply and appropriate to the payment in full, if sufficient, otherwise ratably, of all claims and demands against the said parties of the first part, accounting to them, their heirs, etc., for any surplus that may remain, it being the true intent and meaning hereof to convey all of the property and estate of the said parties of the first part to the said parties of the second part, for the equal benefit of all the creditors of the said parties of the first part in proportion to their respective claims, and that as soon as may be, having regard to the best interests, and avoiding needless sacrifice of the property hereby conveyed, (in order that, if possible, all of said claims may be paid in full,) the said trustees shall convert said property, or so much thereof as may be necessary, into money and apply to the equal payment of all said claims without preference, other than the wages of labor aforementioned; the said parties of the first part not intending, however, by this declaration, to limit or restrict any of the power hereinbefore given to said trustees, and which they may deem it for the best interests of the creditors to exercise."

Acknowledged by all the parties of the first part before a notary public of said Providence, on the 5th day of December, 1878, and recorded in the recorder's office of Cook county, Illinois, December 9, 1878.

Henry W. Gardner and others also read in evidence a deed from the defendant, George H. Sackett, and wife, to said

Henry W. Gardner and others, dated the 31st day of December, A. D. 1878, which is as follows:

"Whereas, by an indenture made and entered into on the 5th day of December, A. D. 1878, between Thomas Davis, Lauriston Towne, George P. Tew, all of the city and county of Providence, State of Rhode Island, and George H. Sackett, of Brooklyn, in the county of Kings, and State of New York, all copartners, doing business in the said city of Providence, under the firm name or style of Sackett, Davis & Co., parties of the first part, and Henry W. Gardner, Lodowick Brayton and Joseph B. Matthewson, all of the said Providence, of the second part, the said Sackett, Davis & Co. did grant, assign and convey to the said Gardner, Brayton and Matthewson and the survivors and survivor of them, their heirs and assigns, all and singular the property, real and personal, of the said Sackett, Davis & Co., and each of the aforenamed members of said firm, not exempt by law from attachment, upon trust, as therein specified, for the equal benefit of the creditors of said firm of Sackett, Davis & Co., as by the said indenture of trust, reference thereto being had, will more fully and at large appear.   And, whereas, certain parcels of the real property of the said Sackett, Davis & Co. have been held in trust for said firm by individual members thereof, from whom, for the purpose of assuring the title thereto in the said Gardner, Brayton & Matthewson, trustees as aforesaid, it is desired to take conveyances thereof to the said trustees."

Therefore, conveys to said Henry W. Gardner and others certain parcels of real estate in said Cook county, Illinois, including the property attached in this suit.

Duly acknowledged by said Sackett and wife according to the statute of Illinois, and recorded in the recorder's office of said Cook county, February 13, 1879.

The above was all the evidence offered by the said Henry W. Gardner and others.

The plaintiff called as a witness B. R. Chambers, who testified as follows:

"I have been in the jewelry business for several years. The said defendants (Sackett, Davis & Co.) are manufacturers of and wholesale dealers in jewelry, and, in the course of their business, were accustomed to, and did usually, sell their goods upon a credit of from two to four months. It is the custom of the wholesale jewelry business to sell on credit."

Messrs. Hutchinson & Luff, for the appellants.

Messrs. Peckham & Brown, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

Although the deed of assignment was executed in Rhode Island, yet its validity and effect, as an instrument for the conveyance of real estate located here, must be determined by our law. Story's Conflict of Laws, sec. 364; Rorer on Inter-State Law, pages 139, 204; *Cutter* v. *Davenport,* 1 Pick. 81; *Osborne* v. *Adams,* 18 id. 245; *Hartford* v. *Nichols,* 1 Paige, 220; *Chapman* v. *Roberts,* 6 id. 627; *Wills* v. *Cowper,* 2 Ham, 124; *Loving* v. *Paire,* 10 Iowa, 282.

The deed of assignment recites that, "whereas, the said Sackett, Davis & Co. are indebted to divers persons in divers sums of money, and their assets, *although amounting in value to about three times their said indebtedness,* can not immediately be made available for the payment of the same," etc. And it empowers the trustees, in their discretion, "to carry on the said jewelry business. of the parties of the first part, for such time as the said trustees may deem for the best interests of the creditors, and necessary for the purpose of preventing shrinkage and loss, and of closing out and liquidating the same to the best advantage." In this feature the case is analogous to *Van Nest* v. *Yoe et al.* 1 Sanford Ch. 4, where, in a very well-reasoned opinion, the Vice Chancellor held the deed of assignment void, as tending to hinder, delay and defraud creditors.

The placing of property in the hands of assignees for any other purpose than to enable them to distribute it or its proceeds among creditors, must necessarily have the effect to, in some degree, hinder and delay creditors in the collection of their debts.    And when the assignor has, or thinks he has, more property than is necessary to pay his debts, the assignment can only be presumed to be intended for his own benefit, for, in that contingency, he alone is to be profited.    In the case referred to it is cogently said by the Vice Chancellor: "No assignment was ever made by a debtor who supposed himself to be solvent, with a view or for the purpose of selling and converting his property into money more speedily than it could be done by process of law.    If such were his design, he would effect it himself without the intervention of an assignee.    The real object is to gain time—to prevent the speedy sale and conversion which an execution would inevitably accomplish."    And, again, he says: "The debtor who, believing himself more than solvent, places his property beyond the reach of the process of the law, whatever may be the pretence under which he cloaks the act, in the language of the Statute of Frauds, 'hinders' and 'delays,' and ultimately defrauds his creditors.    It is no answer to this argument to say, that the debtor provides an ample fund for the payment of the debt, and that the creditor is *ultimately* to be paid in full.    The law gives to *the creditor* the right to determine whether his debtor shall have further indulgence, or whether he will pursue his remedy for the collection of the debt.    The deferring of payment is, generally, an injury to the creditor, and he may be overwhelmed with bankruptcy for the want of the fund which is locked up by the voluntary assignment of his debtor.    It is mockery to such a creditor to say, that the assignment is made for the benefit of creditors."    See also, to the same effect, *Kellogg* v. *Slawson,* 15 Barbour, 56.

Manifestly, the carrying on the jewelry business, in view of the assignors' supposed solvency, "for such time as the

20—95 ILL.

trustees may deem    \*    \*    \*    necessary for the purpose of preventing shrinkage and loss, and of closing out and liquidating the same to the best advantage," could only be designed to prevent a sacrifice of the assignors' property and business that would result from the enforcement of the payment of their debts by the ordinary process of law; and this, as well as the further clause in the deed of assignment authorizing them to "make, sign, indorse and guarantee any and all bills of exchange, promissory notes or other commercial paper,    \*    \*    \*    for any new indebtedness or liability which may be contracted in so carrying on said business," and to lease or mortgage the real estate, etc., clearly vests power in the trustees to hinder, delay, etc., the creditors in the collection of their debts.    They are not compelled, unless upon a request of a majority of the creditors, to close out and make final settlement of the business, at any particular time. Their judgment of what is "for the best interests of the creditors, and necessary for the purpose of preventing shrinkage and loss, and of closing out and of liquidating the same to the best advantage," is to control.    And, although it might appear as clearly as anything could, that the "best interests of the creditors" required the business to be closed up, still, this alone is not sufficient, for they are also to have in view, before acting, what is "necessary for the purpose of preventing shrinkage and loss," etc., etc.

Nor does there appear any limitation upon the trustees, other than what their own judgments may impose, to prevent their incurring new debts in the business, and incumbering the property to its full value for their payment, indefinitely in the future, or to prevent their exhausting the property assigned in the payment of such debts.    They have power to carry on the business, to create debts and give notes, etc., therefor, and to sell and convey and mortgage the real estate.

But we have frequently held that a debtor is only allowed to place his property beyond the reach of his creditors by making a general assignment of all his property, when he does

so for the benefit of the creditors, by devoting it fairly to the payment of his debts, and not with a view to his own advantage. *Nesbitt et al.* v. *Digby et al.* 13 Ill. 387; *Phelps et al.* v. *Curts et al.* 80 id. 113; *Hardin* v. *Osborne*, 60 id. 93.

To make such a deed valid the debtor's property must be unconditionally and without restriction transferred to the assignee, with a general authority to him to receive, hold and dispose of it for the equal benefit of all the creditors in the order of preference, if any, provided for. *McIntire* v. *Benson*, 20 Ill. 500.

In *Vernon* v. *Morton et al.* 8 Dana (Ky.) 263, the court says: "If the intention in executing the deed be to hinder and delay creditors, it will vitiate the whole deed, though it be made upon a good consideration, or for the just and equitable purpose of securing an equal distribution of the effects among all the creditors." And again: "When it appears on the face of a deed of trust that the motive for making it was to *prevent a sacrifice* of the property, a bad motive is shown,—a motive to obstruct the ordinary process of law, or the subjection of the property to the payment of the debts, which vitiates the whole deed." To the same purport is, also, *Ward* v. *Trotter*, 3 Monroe, 1.

So, we have held a deed of assignment void because of a clause therein authorizing the sale of the goods and property assigned on a credit. *Bowen* v. *Parkhurst*, 24 Ill. 257; *Pierce* v. *Brewster*, 32 id. 268; *Whipple* v. *Pope*, 33 id. 334.

The principle applicable here is precisely the same as in the last mentioned cases. There the sale on credit was prohibited because it would involve the tying up of the assets, and hence compel a hindrance, delay and postponement of the claims of creditors. But if the property may be held until new debts are incurred and then mortgaged to secure their payment, or sold and the proceeds devoted to their payment, it is equally clear that the creditor is hindered, delayed and postponed in the collection of his debt.

The suggestion that, as to such new debts, the trustees would only bind themselves, is entirely outside of the language of the deed of assignment. It indirectly but clearly recognizes the right of the trustee to make new debts, which shall become charges upon the property, and by necessary implication to secure the same by mortgage, or pay the same out of sales of the property, and it is by its own terms that, so far as affects the question under consideration, it must stand or fall.

It is not necessary that we should, at present, question the right of a failing debtor, in his deed of assignment, to authorize his assignee to continue to carry on the business to which the assigned property has been devoted, when this is limited to disposing of the stock on hand, and such incidental business as may be reasonably requisite thereto. But this business is not thus limited. The deed here authorizes the trustees to carry on the business generally, for which purpose they are invested with "full and uncontrolled power, in their discretion," and the only attempt at limitation is that in respect of the time which the business may be carried on, which we have before commented upon.

And this distinguishes the cases referred to and relied upon by counsel for appellants, from the present case. None of them sanction the doctrine that trustees may be invested with "full and uncontrolled power" to carry on business. Nor could a doctrine, so at variance with reason, receive our sanction, even if announced by respectable courts.

The court below properly held the deed void as against creditors, and its judgment must therefore be affirmed.

*Judgment affirmed.*