HENRY W. GARDNER *et al. vs.* THE COMMERCIAL NATIONAL BANK *et al.*

The members of a copartnership made a voluntary assignment of their copartnership and individual property in trust for the benefit of their creditors. The trust deed stated that the assets, although amounting in value to threefold the indebtedness, could not be made available for payment of the accruing liabilities, that the interests of the creditors might require the continuance of the business and its gradual closing up, and that the assignors were desirous of equally securing and paying their creditors. For these purposes the trustees received full power to manage the property at their discretion, to invest, reinvest, and change investments, to carry on the business so long as they deemed needful for the creditors' interests, and to prevent shrinkage and loss, and to close up the same to the best advantage, to give new notes and indorsements in place of existing ones and for the assignors' debts, to mortgage the assigned realty and personalty, and to lease the real estate on such terms as they chose. Provided, that these powers should cease when a majority in amount of the creditors should so direct.

Certain creditors of the firm attached the realty conveyed, and after judgment advertised it for sale on execution, whereupon the trustees filed a bill in equity to enjoin the sale and vacate the attachments.

*Held*, on demurrer to the bill, that the assignment was upon its face invalid, as intended to secure an advantage to the assignors by preventing the sacrifice of their property, as tending to hinder and defraud creditors, and as allowing the trustees to exceed a reasonable limit of time in closing up the assignment.

After the attachments were laid upon the property conveyed, the assignors made new and unconditional assignments to the same trustees in order to vacate the attachments under Pub. Laws R. I. cap. 723, §§ 1, 3, of June 20, 1878.

*Held*, that the earlier assignment being good as against all persons except dissenting creditors, the later assignments could only affect property acquired after the earlier assignment, or thereafter becoming attachable or accruing to the assignors as surplus.

*Held*, further, that the later assignments could convey the previously assigned property neither by virtue of cap. 723, nor by operation of law.

*Held*, further, that the assignment provided for in cap. 723, § 1, is both in fact and law to be construed as a voluntary assignment.

*Held*, further, that the later assignments did not dissolve the attachments under cap. 723, § 1.

*Nightingale* v. *Harris & Lippitt*, 6 R. I. 321, criticised.

BILL IN EQUITY to remove a cloud upon title to realty and to enjoin execution sales. . On demurrer to the bill.

The General Statutes of Rhode Island cap. 162, § 1, provide: " Every gift, grant, or conveyance of land, tenements, hereditaments, goods, or chattels, or of any rent, interest, or profit out of

the same by writing or otherwise, and every note, bill, bond, contract, suit, judgment, or execution, had or made and contrived of fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, debts, suits, accounts, damages, or just demands of what nature soever, or to deceive or defraud those who shall purchase "*bonâ fide*" the same lands, tenements, hereditaments, goods, or chattels, or any rent, interest or profit out of them, shall be henceforth deemed and taken as against such person or persons, his, her, or their heirs, successors, executors, administrators, or assigns, and every of them, whose debts, suits, demands, estates, rights, or interests by such guileful and covinous devices and practices as aforesaid, shall or may be in any wise injured, disturbed, hindered, delayed, or defrauded, to be clearly and utterly void, any pretence, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding."

Pub. Laws R. I. cap. 723, of June 20, 1878, are as follows :

" SECT. 1. Whenever the property of any debtor shall have been attached or levied upon by any creditor, the debtor may at any time before such property shall be sold and the proceeds thereof applied to the payment of the claim or judgment upon which such attachment or levy shall have been made, within sixty days after such attachment or levy, suspend such attachment or levy by making and having recorded in the records of the town or city where the assignor resides, or where any of the real estate is located, an assignment of all the property and estate of such debtor, not exempt by law from attachment, to some citizen of this State for the equal benefit of all his creditors in proportion to their respective claims, except as is provided in the third section hereof. And all attachments and levies so suspended shall be dissolved at the expiration of thirty days thereafter, unless otherwise ordered by the Supreme Court in some proper proceeding.

" SECT. 2. Whenever any debtor, being insolvent, shall do any act or make any conveyance whereby any one of his creditors shall obtain a preference over any other of his creditors, or knowingly omit to do any act which he might lawfully do to prevent one of his creditors from obtaining a preference over his other creditors, contrary to the intent of this act, any three or more of his credit-

ors holding not less than one third of the debts in amount of such debtor, may file a petition in equity, either in term time or in vacation, in the Supreme Court in the county where such debtor resides, but which may be heard in any county, and after notice to the debtor and to the creditors sought to be preferred, of the time and place of hearing thereon, the court, sitting in banc, shall proceed summarily to hear the parties, and if it shall appear to the court that such debtor is insolvent, and has been giving, or is about to give, a preference to any of his creditors over others of such creditors, the court shall appoint, from the nominations by the creditors, a receiver, who shall take possession of all the property, evidences of property, books, papers, debts, choses in action, and estate of every kind of the debtor not exempted by law from attachment, including property attached or levied upon, in the manner and subject to the limitation hereinbefore provided, and all property conveyed in violation of the provisions of this act, and convert the same to money, and marshal and distribute the same among the several creditors of the insolvent, whether their claims are due or to become due, who shall come in and prove their respective claims within such time and in such manner as the court shall direct, and the court shall order such debtor to file a schedule of his debts and to whom due, and of his property, and to do whatever may be necessary and proper to carry this act into effect, and all proceedings therein or thereunder shall be in accordance with the course of equity, and such as the court shall by general rule or by special order prescribe.

"SECT. 3. No assignment hereafter made for the benefit of creditors shall give to any one creditor any preference over the claims of any other creditor, except the creditor be the United States or the State of Rhode Island, or for the wages of labor performed within six months previous to such assignment, not exceeding one hundred dollars to any one person.

"SECT. 4. Conveyances and payments made and securities given by an insolvent debtor, or by a debtor in contemplation of insolvency, within sixty days of the commencement of proceedings against such debtor under this act, with the view of giving a preference to any creditor upon a preëxisting debt, or to any person under liability for such debtor over another creditor, shall be

void as to all creditors receiving the same who shall have reasonable cause to believe that such debtor was insolvent at the time of such preference.

"SECT. 5. The court may, at any time during the pendency of any petition filed under the second section of this act, allow new parties to come in and be joined in such petition.

"SECT. 6. This act shall not apply to any action or proceeding which shall have been commenced before the passage hereof.

"SECT. 7. Costs in cases upon which attachments or levies are made, which are dissolved under the provisions of this act, shall be preferred and be first paid by the receiver to be appointed hereunder.

"SECT. 8. All actions and proceedings to be commenced under the provisions of this act may be commenced and prosecuted in the name of the receiver appointed hereunder.

"SECT. 9. The sixty days mentioned in the fourth section of this act, within which mortgages and other conveyances named in said act shall be liable to be set aside and be made subject to the provisions of said act, shall begin to run from and after the leaving of such mortgage or other conveyance for record at the office of the proper registering officer, provided that such mortgage or conveyance is one required by law to be recorded.

"SECT. 10. All acts and parts of acts inconsistent herewith are hereby repealed.

"SECT. 11. This act shall take effect on the 1st day of September, A. D. 1878."

These statutory provisions being in force, the firm of Sackett, Davis & Co., December 5, 1878, executed and delivered the following trust deed:

"THIS INDENTURE, made and entered into this fifth day of December, A. D. 1878, by and between Thomas Davis, Lauriston Towne, George P. Tew, all of the city and county of Providence, in the State of Rhode Island, and George H. Sackett, of Brooklyn, in the County of Kings and State of New York, all copartners doing business in the said city of Providence, under the firm name or style of Sackett, Davis & Co., parties of the first part, and Henry W. Gardner, Lodowick Brayton, and Joseph B. Mathewson, all of said Providence, of the second part,

" Witnesseth, whereas the said Sackett, Davis & Co. are indebted and under liability to divers persons in divers sums of money, and their assets, although amounting in value to about three times their said indebtedness, cannot immediately be made available for the payment of the same as their said indebtedness shall from time to time mature ;

" And whereas, the said parties of the first part are desirous of equally securing and paying all their said indebtedness and liabilities by the conveyance of all their properties to the said parties of the second part, in trust as hereinafter provided, which trust the said parties of the second part do by these presents accept ;

" And whereas, the best interests of the creditors may require that the jewelry business, in which the said Sackett, Davis & Co. have been hitherto engaged, should be for some period continued by the said trustees, and by them gradually discontinued and closed out :

" Now, therefore, the said parties of the first part, in consideration of the premises and of the trusts hereinafter set forth, and of the sum of one dollar to them paid by the said parties of the second part, the receipt whereof is acknowledged, do give, grant, bargain, and sell, assign, transfer, set over, and convey unto said Gardner, Brayton, and Mathewson, and the survivors and survivor of them, their heirs, executors, administrators, and assigns, all and singular, the real and personal estate of every name, nature, and description, wherever the same may be situated, and however described, of which the said parties of the first part, or any or either of them, are seised or possessed, or to which they or any of them are entitled, or have any interest in, either as copartners or otherwise, except such property as is exempt from attachment by law.

" To have and to hold the same with the appurtenances thereof, unto the said Gardner, Brayton, and Mathewson, and the survivors and survivor of them, their heirs, executors, administrators, and assigns, upon the following trust — that is to say : They shall take possession of all the property hereby conveyed, and shall have power to invest, reinvest, and change investments of the same, and to manage, act, and deal with said property absolutely, in their uncontrolled discretion, as they may judge for the best

interests of all the creditors.   They shall have free, full, and un-controlled power in their discretion to carry on the said jewelry business of the said parties of the first part, for such time as the said trustees may deem for the best interests of the creditors, and necessary for the purpose of preventing shrinkage and loss, and of closing out and liquidating the same to the best advantage, and herein to draw, make, sign, indorse, and guarantee any and all bills of exchange, promissory notes, òr other commercial paper, as well in renewal or extension of any commercial paper on which the said parties of the first part are now liable in any form, or for any other existing debt or liabilities of the said parties of the first part, as for any new indebtedness or liability which may be contracted in so carrying on said business; provided, however, that the foregoing authority to carry on said jewelry business for the purposes above declared shall forthwith cease and determine whenever a majority in amount of the creditors of the said parties of the first part shall so direct the said trustees.

" They shall have free, full, uncontrolled power in their discre-tion to sell any and all of the real property hereby conveyed, and to sign, seal, acknowledge, and deliver any deed or deeds, convey-ance or conveyances of such real property from time to time as they may judge best, and so as to pass the fee thereof, and with or without warranties as they may deem best, and in like manner to lease the same upon such terms as they may see fit, or to mort-gage any and all of the said real property, and to sell and trans-fer, pledge or mortgage any and all of the personal property hereby conveyed, to settle and compound for any debts or other choses in action held in trust under this indenture ; and to give good and sufficient receipts, acquittances, and discharges for the same, and the said parties of the first part hereby declare that the receipt of the said trustees for any rent, interest, dividends, or other moneys whatsoever, shall be a full acquittance and dis-charge for the same.   And the said parties of the first part hereby order and direct that no purchaser, mortgagee, or pledgee of any real or personal property held in trust under this indenture, or other person dealing with or paying money to said trustees, shall be under any obligation to inquire as to the necessity, regularity,

or propriety of any sale, mortgage, pledge, or other act or trans-
action whatever, made, done, or entered into by said trustees, or
to see to the application of any purchase money, or other moneys
raised or realized from any such sale, mortgage, pledge, or other
act or transaction, or any moneys paid to said trustees, or be
bound or liable for the mal-application or misapplication thereof.

"And said parties of the first part hereby direct the said trus-
tees, after paying all taxes and assessments upon said trust prop-
erty, and for all repairs and improvements they may make, or
cause to be made, of or upon the same, and all expenses of man-
aging said property, including the premiums for such insurance
upon the insurable property hereby conveyed as the said trustees
may keep and maintain, and after reserving to themselves a rea-
sonable compensation for their services hereunder, and paying in
full the wages due from the said parties of the first part to all
persons who have performed labor within six months previous to
the date hereof, not exceeding one hundred dollars to any one
person, to retire all of the said indebtedness and liabilities of the
said parties of the first part, including such as may be contracted
by said trustees in carrying on the said jewelry business, or other-
wise in carrying out the provisions of this indenture, as rapidly
as in their opinion it can judiciously be done out of the profits,
income, and revenue of the said jewelry business, and any invest-
ments of said trust property, and by the sale, pledge, or mortgage
of such of the real and personal property held in trust under this
deed, as they may think desirable; and in so doing to make such
dividends or *pro rata* payments on account of all said indebted-
ness and liabilities from time to time as the said trustees may
deem prudent, and for the best interests of all the creditors, and
as rapidly as in the opinion of said trustees it can judiciously be
done, to convert the whole of the property hereby conveyed, or so
much thereof as may be necessary, into money, and apply and
appropriate the same to the payment in full, if sufficient, other-
wise ratably, of all claims and demands against the said parties
of the first part, accounting to them, their heirs, executors, ad-
ministrators, and assigns, for any surplus that may remain after
applying the same to the purposes aforesaid.

"It being the true intent and meaning hereof, to convey all

of the property and estate of the said parties of the first part to the said parties of the second part, for the equal benefit of all of the creditors of the said parties of the first part in proportion to their respective claims (excepting as a preference is hereinbefore given to the claims for labor above described), and that as soon as may be, having regard to the best interests of the creditors, and avoiding needless sacrifice of the property hereby conveyed (in order that if possible all of said claims may be paid in full), the said trustees shall convert said property, or so much thereof as may be necessary, into money, and apply the same to the equal payment of all said claims, without preference other than the wages of labor aforementioned, the said parties of the first part not intending, however, by this declaration to limit or restrict any of the power hereinbefore given to said trustees, and which they may deem it for the best interests of the creditors to exercise.

" And it is hereby further declared, that in case any one or two of the trustees hereinbefore named shall die, resign, or become incapable of acting as such trustee or trustees, the said trust property, and the trusts and powers herein declared and conferred, shall thereupon and thereby .vest in, and the said trusts and powers thenceforth be executed and exercised by, the survivors or survivor of said trustees.

" In witness whereof, the parties to this indenture have hereunto set their hands and seals the day and year above mentioned.

| " In presence of | GEORGE H. SACKETT, | [L. S.] |
| George Fuller as to George H. Sackett, | THOMAS DAVIS, | [L. S.] |
| Thomas Davis, Lauriston Towne, and | LAURISTON TOWNE, | [L. S.] |
| George P. Tew. | GEORGE P. TEW. | [L. S.] |
| " And in presence of | HENRY W. GARDNER, | [L. S.] |
| C. H. Parkhurst, as to H. W. Gardner, | LODOWICK BRAYTON, | [L. S.] |
| L. Brayton, and J. B. Mathewson. | J. B. MATHEWSON, | [L. S.] |

" STATE OF RHODE ISLAND, &C., }
          PROVIDENCE, SC.          }

" In the city of Providence, on the fifth day of December, A. D. 1878, George H. Sackett, Thomas Davis, Lauriston Towne, and George P. Tew, to me known to be the individuals described in, and who executed the foregoing instrument, personally appeared

before me and severally acknowledged that they executed the same as their free act and deed.

                   " GEORGE FULLER, *Notary Public.*

   " Recorded December 5, 1878, at 2 P. M.

              " G. A. WILLIAMSON, *Recorder of Deeds.*"

March 3, 1879, the Commercial National Bank of Providence brought suits against Sackett, Davis & Co., Thomas Davis, and George P. Tew, and claiming that the trust deed above given was void, served its writs by attaching the real estate conveyed by said trust deed. March 6, 1879, the National Exchange Bank of Providence brought suit against Thomas Davis, and attached the realty of Davis conveyed by said trust deed.

March 21, 1879, Sackett, Davis & Co. executed and delivered a deed of assignment as follows :

" Know all men by these Presents that we, Thomas Davis, Lauriston Towne, George P. Tew, all of the city and county of Providence in the State of Rhode Island, and George H. Sackett, of Brooklyn, in the county of Kings, and State of New York, all copartners doing business in the said city of Providence, under the firm name or style of Sackett, Davis & Co., for and in consideration of the sum of one dollar to us paid by Henry W. Gardner, Lodowick Brayton, and Joseph B. Mathewson, all of said city of Providence, the receipt whereof is acknowledged, do hereby grant, bargain, sell, assign, transfer, set over, and convey unto the said Henry W. Gardner, Lodowick Brayton, and Joseph B. Mathewson, and the survivors and survivor of them, their heirs, executors, administrators, and assigns.

" All and singular the real and personal estate of every name, nature, and description, wherever the same may be situated, and however described, of which we. as copartners as aforesaid are seised or possessed, or to which as copartners as aforesaid we are entitled, or in which as such copartners we have any interest, except such property as is exempt from attachment by law.

" To have and to hold the same with the appurtenances thereof unto them the said Henry W. Gardner, Lodowick Brayton, and Joseph B. Mathewson, and the survivors and survivor of them, their heirs, administrators, and assigns, forever.

" In trust nevertheless for the equal benefit of all the creditors of our said copartnership in proportion to their respective claims.

" In witness whereof," &c.

       Signed, sealed, acknowledged, and recorded.

On the same day and the following day, March 22, 1879, the copartners of the firm Sackett, Davis & Co. made each an assignment similar to the above and to the same assignees, conveying their individual property for the equal benefit of their respective creditors in proportion to the claims of such creditors against the individual assignors.

The above named banks prosecuted their suits to judgment, took out executions, levied them on the property attached, and advertised it for sale on the executions. Thereupon the assignees brought this bill against the two banks, setting forth the above facts and deeds, and praying that the sale on execution might be perpetually enjoined, and that the cloud on the complainants' title caused by the attachments and the execution levies might be removed.

The respondents demurred to the bill. The demurrer was heard June 7, 1880, by DURFEE, C. J., and POTTER and MATTESON, JJ.; but as one of the justices found that he was interested in the matter of the suit a reargument was ordered, which took place November 1, 1880, before DURFEE, C. J., and MATTESON and STINESS, JJ.

*James Tillinghast*, for respondents, in support of the demurrer.

*Charles Hart & Charles H. Parkhurst*, for complainants, *contra*.

I. The deed of December 5, 1878, was effectual in law to transfer to the complainants all the estates of the firm of Sackett, Davis & Co., and of the individual members thereof, upon the trust therein declared, and is valid and operative as against creditors.

*a.* The object of the trust declared in the deed was certainly legitimate and meritorious. " *To convey all of the property and estate of the parties of the first part to the said parties of the second part for the equal benefit of all the creditors of the said parties of the first part in proportion to their respective claims.*"

*b.* The authority conferred in terms by said deed upon the trustees, " *To carry on the jewelry business of the parties of the first part for such time as the said trustees may deem for the best interests of the creditors, and necessary for the purpose of preventing shrinkage or loss, and of closing out the same to the best advantage,*" was a power already in the trustees, implied by law, and was necessarily incident to the principal powers granted the trustees. It was only ancillary to the winding up of the debtors' affairs, and promoting the best interests of the creditors by preventing loss to them. *Janes* v. *Whitbread*, 11 C. B. 406 ; *Cunningham* v. *Freeborn*, 11 Wend. 240 ; *De Forest* v. *Bacon*, 2 Conn. 633 ; *Kendall* v. *New England Carpet Co.* 13 Conn. 383 ; *Woodward* v. *Marshall*, 22 Pick. 468 ; *Marks* v. *Hill*, 15 Gratt. 400.

*c.* No power is expressly given to the trustees, nor can any such power be implied in the trust that the trustees were to sell on credit, and the specific power granted to the trustees, "*As rapidly as in the opinion of the trustees it can judiciously be done, to convert the whole of the property hereby conveyed, or so much thereof as may be necessary, into money,*" for the payment of debts, is certainly not *per se* a fraudulent provision, and does not invalidate the deed. It only states, perhaps with surplusage, the bounden duty of the trustees. *Booth* v. *McNair*, 14 Mich. 19 ; *Ogden* v. *Peters*, 21 N. Y. 23 ; *Jessup* v. *Hulse*, 21 N. Y. 168 ; *Sackett* v. *Mansfield*, 26 Ill. 21 ; *Finlay* v. *Dickerson*, 29 Ill. 9 ; *Whipple* v. *Pope*, 33 Ill. 334 ; Burrill on Assignments, 3d ed. 308.

*d.* The power conferred in terms upon the trustees, to mortgage, pledge, or lease the assigned estate, even if inoperative, will not avoid the deed. *Darling* v. *Rogers*, 22 Wend. 483 ; *Montgomery* v. *Galbraith*, 19 Miss. (11 Sm. & M.) 555 ; *Beatty* v. *Davis*, 9 Gill, 211 ; *Nightingale* v. *Harris & Lippitt*, 6 R. I. 321.

*e.* The assignors have parted with all their property, and have relinquished all dominion and control over it. There is no reservation of any authority. It is all to be applied to the payment of their debts, and every special authority conferred by deed is broadly stated to be conferred " to promote the best interests of all the creditors, in order that all the debts of the assignors may be paid, if possible."

*f.* There is nothing in the deed itself which in any way contravenes any provision of the common law or the statute.

II. The only effect that can be given to the subsequent assignments of March, 1879, in case the deed of December 5, 1878, is for any reason inoperative, is a remedial effect in curing the defects of that deed. All these conveyances are to be considered and construed as parts of one and the same transaction, having the same object in view, the equal distribution of all the assignors' estates among their creditors. *Merrill* v. *Englesby*, 28 Vt. 150; *Hone* v. *Woolsey*, 2 Edw. Ch. 289; *Macomber* v. *Weeks*, 3 Met. 512; *Ingraham* v. *Wheeler*, 6 Conn. 277; *Mills* v. *Argall*, 6 Paige, 577.

III. But if, as is alleged by the respondents, the deed of December 5, 1878, creates a preference of copartnership creditors over individual creditors, still the preference is valid as against the respondents, as their attachments or proceedings against the debtors were not commenced within sixty days after the date and record of the deed of December 5, 1878. Pub. Laws R. I. cap. 723, of June 20, 1878; *James* v. *Mechanics' National Bank*, 12 R. I. 460.

Preferences allowable at common law in Rhode Island can only be invalidated by proceedings under cap. 723 of the Public Laws. *James* v. *Mechanics' National Bank, supra.*

*December* 18, 1880. DURFEE, C. J. The mere fact that an assignment for the benefit of creditors has a tendency to hinder and delay them, or some of them, in the enforcement of their claims, is not decisive against it, for such is the tendency of such an assignment, even when it is entirely unconditional. It is permissible to frame the assignment so that it will hinder and delay the creditors or some of them to some extent, when it is done for the more effectual accomplishment of the proper purpose of the assignment, namely, the application of the assigned property to the payment in the fullest possible measure of the debts. In such an assignment there is no fraudulent intent, and it is not the mere hindering and delaying, but the fraudulent intent to hinder and delay on the part of the assignor, which makes the assignment void. It is easy, however, to exceed the allowable limit, and to make an assignment calculated to hinder and delay, for the purpose of securing a benefit to the assignor or some person other than the creditors at their expense. Such an assign-

ment would be fraudulent and void.  For instance, an assignment by a solvent person in order to protect the property from legal process because the times are bad and to hold it for better times, would be fraudulent and void, being an attempt by the assignor to get an advantage for himself at the expense of his creditors. *Van Nest* v. *Yoe et als.* 1 Sandf. Ch. 4 ; *Planck* v. *Schermerhorn*, 3 Barb. Ch. 644 ; *Burt* v. *McKinstry & Seely*, 4 Minn. 204, 215 ; *Gere* v. *Murray*, 6 Minn. 305 ; *Vernon* v. *Morton & Smith*, 8 Dana, 247, 263 ; *Ward* v. *Trotter*, 3 T. B. Mon. 1 ; *Phelps* v. *Curts*, 80 Ill. 109 ; *Gardner* v. *Commercial National Bank*, 95 Ill. 298.  Creditors are entitled not only to be paid, but to be paid as their claims accrue, and, therefore, in contemplation of law, the debtor has no more right to postpone payment simply for his own advantage than to defeat it altogether.  *Nicholson* v. *Leavitt*, 6 N. Y. 510.

We think the assignment here, dated December 5, 1878, must be regarded, *primâ facie* at least, as fraudulent and void under our statute of fraudulent conveyances.  It is an assignment by four persons who describe themselves as copartners doing business under the firm name of Sackett, Davis & Co.  It conveys all their property, both copartnership and individual, except such as is exempt from attachment by law.  The question has been made whether it is for the benefit of copartnership creditors only or for both copartnership and individual creditors.  We think it is for the benefit of both classes alike.  It states, by way of preamble, that "the said Sackett, Davis & Co. are indebted and under liability to divers persons in divers sums of money, and their assets, although amounting in value to about three times their said indebtedness, cannot immediately be made available for the payment of the same as their said indebtedness shall from time to time mature."  Literally taken, the statement is that the partnership assets are almost three times as great as the partnership debts.  We are inclined to think, however, in view of the assignment as a whole, that the meaning is that the partnership and individual assets are almost three times as great as the partnership and individual debts, and that the partnership is put for the partners as well individually as jointly, because the embarrassment originated in the business of the partnership.  The

assignment states further, by way of preamble, that " the best interests of the creditors may require that the jewelry business, in which the said Sackett, Davis & Co. have been hitherto engaged, should be for some period *continued* by the said trustees, and by them *gradually discontinued* and closed out." For these reasons, and " for the purpose of equally securing and paying all their creditors," the assignment *purports* to have been made. It confers very large discretionary powers upon the assignees. It empowers them " to invest, reinvest, and change investments," and " to manage, act, and deal " with the assigned property " absolutely, in their uncontrolled discretion, as they may judge for the best interests of all the creditors." It gives them " free, full, and uncontrolled power in their discretion to carry on " the business " for such time " as they may " deem for the best interests of the creditors, and necessary for the *purpose of preventing shrinkage and loss, and of closing out and liquidating the same to the best advantage.*" It also empowers them to give new notes and indorsements in lieu of the existing notes or indorsements or other debts of the assignors, as well as for their own liabilities contracted in carrying on the business, and to lease the real property assigned " *upon such terms as they may see fit,* or to mortgage *any and all* " of it, and to " pledge or mortgage any and all of the personal property." The only restraint to which the assignment subjects the assignees is that their authority to carry on the business shall forthwith cease and determine whenever a majority in amount of the creditors shall so direct. In view of these powers and of the careful provision made for carrying on the business, it looks very much as if a principal purpose of the assignment was to rescue the business from impending ruin and keep it alive for the benefit of the assignors, meanwhile paying the creditors gradually out of the profits and out of such other property as could be disposed of without seriously crippling the business. It is true that the assignment does contain directions to the effect that whatever is done by the assignees under it shall be done with a view to the best interests of the creditors; but, to say nothing of the numerous minor indications which the assignment contains that these directions were not meant to be imperative, the great fact which it recites, that the property was

almost three times as much as was necessary to pay the debts, renders it incredible that the assignment was designed to promote not any interest or advantage of the assignors as distinct from that of the creditors, but simply the best interests of the creditors. In *Gardner* v. *Commercial National Bank*, 95 Ill. 298, the validity of this assignment was litigated before the Supreme Court of Illinois, and the court held it to be invalid under the laws of that State, because it appeared on the face of it to have been made not simply for the benefit of the creditors, but to secure an advantage to the assignors, namely, to prevent a sacrifice of the property. We cannot resist the belief that the conclusion of the Supreme Court of Illinois in regard to the purpose of the assignment was correct. And this being so, the assignment is, in our opinion, as invalid under the laws of this State as it was under the laws of Illinois. See the cases above cited.

In *Dunham* v. *Waterman*, 17 N. Y. 9, the New York Court of Appeals held that a provision in the assignment by an insolvent debtor of all his property, consisting in part of unfinished machinery and materials in process of manufacture, the completion of which was necessary to an advantageous sale, and authorizing the assignees to complete the manufacture and work up the materials at the expense of the assigned fund, *as in their judgment might be advisable so as to realize the greatest amount of money therefrom*, rendered the assignment fraudulent and void on its face. It was urged for the assignees, in that case, that the powers which were granted to them were merely such as they would have had by implication without grant, and that therefore the grant would not have the effect of making the assignment void. But the court was of opinion that the assignees took under the grant something beyond what would have accrued to them by implication, namely, a discretion in regard to carrying on the business, which, unless it was fraudulently exercised, the court could not terminate or control, and that thus, by virtue of this discretion, the creditors might be kept at bay so long as the assignees might see fit to carry on the business. The New York Court of Appeals probably went further in the case of *Dunham* v. *Waterman* than we should be likely to go in a similar case, but the reasoning on which the court rested their decision has great

force in it, and it has vastly more force in its application to the assignment here than it had in its application to the New York assignment. For here the power conferred is not simply a power to work up materials on hand and to finish unfinished goods with a view to their more advantageous sale, but it is a power to carry on the business so long as the assignees " may deem for the best interests of the creditors, and necessary for the purpose of preventing shrinkage and loss, and of closing out and liquidating the same to the best advantage." Nay more, it is a power to extend the old and to incur new debts, to pledge and mortgage the personal property, and to mortgage the real property, and to lease the real property upon such terms as they may see fit. The business, therefore, may be carried on under the assignment indefinitely, by virtue of a sort of forced loan, unless a majority in amount of the creditors see fit to object, and may be carried on, too, by persons to whom a minority of the creditors would never think of lending their money if they had the option to lend it or not. And even if a majority in amount of the creditors should finally interpose, it may, nevertheless, turn out that prior to their interposition the assignees have, in the exercise of their discretion, leased or mortgaged the property for long terms, and so have put it beyond even their own ability to close out the assignment without great delay. Now can it be held that an assignment which expressly permits and empowers the assignees so to protract the day of settlement, and to subject the creditors to such coercion, and so to burden and tie up the property assigned by new contracts and conveyances, is not fraudulent and void on the face of it, as manifesting an intent to hinder and delay the creditors, for the reason that any hindering or delaying consequent on the execution of the assignment, according to its terms, may be supposed to have been intended simply for the benefit of the creditors, and not with a view to any advantage or benefit to be gained by the assignors at their expense ? We think it would be unreasonable, regarding simply the assignment, to hold so.

There is, moreover, a limit to the delay which is permissible in closing out an assignment, even when the purpose of the delay is to insure a fuller payment of the debts, for it is often as important to the creditor to be promptly as to be fully paid. What the limit

is depends of course on what is reasonable, considering the character and circumstances of the property assigned. The assignment here does not hold the assignees to any such limit; but on the contrary empowers them to exceed it, even if the assignment does not conclusively demonstrate an intent to have them exceed it. See *D'Ivernois* v. *Leavitt*, 23 Barb. S. C. 63.

The complainants contend that the assignment is valid according to Rhode Island precedent, which is less exacting than that of many other States. *Dockray* v. *Dockray*, 2 R. I. 547; *Spencer & Pierce* v. *Jackson*, 2 R. I. 35; *Nightingale* v. *Harris & Lippitt*, 6 R. I. 321. We do not intend to question the authority of these cases, which, however, went confessedly to the very verge of what is permissible under our statute of fraudulent conveyances. The only one of them which can be supposed to be much in point is *Nightingale* v. *Harris & Lippitt*. There the assignor had made two assignments. Certain of his creditors released him for the chance of a dividend under his first assignment. After they had released him, he acquired by inheritance a considerable estate, which he assigned for the benefit of his creditors, putting the releasing on a par with the non-releasing creditors. The court held that the provision for the releasing creditors, though null and void in itself, being separable, did not vitiate the entire assignment. The ground of the decision was that the provision did not originate in any fraudulent intent on the part of the assignor, but rather in an honest but unwarranted design to apply a portion of his newly acquired property to his debts of moral as well as to his debts of legal obligation. The doctrine of the case is that under our statute an assignment which is claimed to hinder and defraud will not be avoided unless there is an actual fraudulent intent. The decision is not entirely self-consistent; for while it insists upon actual fraud as .the fatal element'and acquits the assignor of any actual fraud, it nevertheless annuls the provision in favor of the releasing creditors, because the provision, being separable, can be annulled without annulling the entire deed. It follows that if the illegality had infected the entire deed, so as not to be separable, the entire deed would have had to be annulled without any actual fraudulent intent, which is what the court say, in its opinion, is not according to the statute.

The opinion contains some expressions which seem to imply that what the court mean by an actual fraudulent intent is a *consciously* dishonest intent. If this be the meaning, it would follow that no assignment could be set aside, whatever its provisions, if the assignor supposed he had a right to make it. We think, however, that the expressions referred to were unguarded, and cannot be taken to import all that they seem to import; for it is assumed elsewhere in the opinion that an assignment containing reservations for the assignor or his family, or for a mere volunteer, would be unquestionably fraudulent and void. But if an assignment is void on account of such reservations, why is it not equally void if it is made with the intent to secure a resulting surplus for the assignor, or to increase such surplus, by holding the creditors at bay until such time as they can be paid without sacrificing his property? We know of no reason why it is not. The object is essentially the same in both cases, and therefore the intent to accomplish the object, if actually entertained, is legally as fraudulent in the one case as in the other. It is an intent on the part of the assignor to hinder and delay his creditors by putting his property out of their reach for his own advantage simply, and such an intent is necessarily fraudulent, however the assignor may regard it.

After the assignment of December 5, 1878, and after a large portion of the assigned property had been attached by the defendants as creditors of the assignors, under claim that the assignment was as to them fraudulent and void, the assignors, severally and individually, and also jointly and as copartners, executed to the complainants, who were assignees under the assignment of December 5, 1878, new and unconditional assignments of all their property not exempt from attachment by law for the equal benefit of all their creditors, in proportion to their respective claims. The complainants contend that if the former assignment was invalid, the latter assignments are valid and effectual, under Pub. Laws R. I. cap. 723, § 1, of June 20, 1878, to carry the property conveyed by said former assignment, and to dissolve the attachments made by the defendants.

Previous to the enactment of chapter 723, it was well settled that an assignment or other conveyance, invalid as to creditors,

because made to hinder, delay, or defraud them, was nevertheless valid as between the parties to it and as against everybody except creditors and *bonâ fide* purchasers for value. *Bean* v. *Smith*, 2 Mason, 252, 274; *Randall* v. *Phillips*, 3 Mason, 378, 388; *Porter* v. *Williams & Clark*, 9 N. Y. 142; *Brownell* v. *Curtis*, 10 Paige, 210, 211; *Chapin* v. *Pease*, 10 Conn. 69; *Maiders* v. *Culver's Assignee*, 1 Duv. 164. There are some cases which even. go so far as to hold that an assignment or conveyance to a *creditor* by a debtor who has previously assigned or conveyed his property in fraud of his creditors is ineffectual, the debtor no longer having any title which he can *so* convey. *Fox* v. *Willis*, 1 Mich. 321; *Grimsley* v. *Hooker*, 3 Jones Eq. 4; *Barton* v. *Vanheythuysen*, 11 Hare, 126; 23 Eng. Law & Eq. 491; *Tate* v. *Liggat*, 2 Leigh, 84. It follows, of course, under the law as it existed previous to the enactment of chapter 723, that the assignees under the earlier assignment, when they accepted that assignment, took all the property which the assignors then had to assign, except what was exempt from attachment, to be held by them upon the trusts declared in the assignment, and consequently that they could acquire no new title to *that* property under the later assignments. The whole effect of the later assignments would be to pass property afterwards acquired, or which, being previously acquired, had afterwards become attachable, or which might accrue to the assignors as a resulting surplus under the earlier assignment. *Griffin* v. *Marquardt*, 17 N. Y. 28; *Van Heusen & Charles* v. *Radcliff*, 17 N. Y. 580; *Holland* v. *Cruft*, 20 Pick. 321, 328; *Knowles* v. *Lord*, 4 Whart. 500, 507; *Pierson* v. *Manning*, 2 Mich. 445, 453; *Frow* v. *Downman*, 11 Ala. 880, 885; *Luckenbach* v. *Brickenstein*, 5 W. & S. 145; *Maas* v. *Goodman*, 2 Hilt. 275.

The question then is whether the later assignments can carry the property previously assigned by force of chapter 723. That chapter does not purport to give to an assignment, made according to its provisions, any new efficacy as a conveyance; but it merely enacts that if the property of the assignor has been attached or levied upon, such an assignment, duly executed and recorded within sixty days after the attachment or levy, shall suspend it, and, at the expiration of thirty days thereafter, dis-

solve it, unless the Supreme Court otherwise directs. If, then, the assignment under chapter 723 acquires any new efficacy, it acquires it, not by force of any express language, but by construction or operation of law. It is contended that such an assignment is to be regarded, not as a mere voluntary assignment, but as in the nature of an assignment in bankruptcy, under which the assignee represents the creditors, and is entitled, in behalf of the creditors, to treat any conveyance previously executed by the assignor in fraud of them as void. The chapter, it is argued, establishes a new system, which, unless the chapter is so construed, cannot be successfully carried into effect. There is a good deal of force in the argument that the assignee ought to be regarded as representing the creditors, but it is derived mainly from considerations which are not dependent on, and which are but slightly strengthened by, chapter 723. Under the influence of these considerations the law has been changed in this particular in some States by statute. Perhaps it would have been good policy for our General Assembly to have done the same thing. We cannot, however, do it by construction, merely because we think it would be good policy to have it done, unless we find something in the language of the statute which warrants the construction. We do not find anything. The assignment contemplated by the statute is the voluntary act of the debtor. It is optional with him to make it or not. And if he makes it, the assignee is an assignee of his own choice, and is not imposed upon him either by his creditors, or by any legal tribunal acting in their behalf. We think it must be construed to be in law, as it is in fact, a voluntary assignment.

It has been suggested that the later assignments are effectual to carry the property previously assigned by operation of law. The argument is, that the earlier assignment, though valid between the parties, was invalid as to the creditors, and that the defendants annulled it when they attached, and so revested the property, or otherwise they would have attached nothing; and consequently, that the property being revested, passed by the later assignments, subject at first to the attachments, but afterwards, the attachments being dissolved under the statute, released from them. We do not think this argument is sound. The at-

tachments did not revest the property, for, as against dissenting creditors making the attachments it never passed, the earlier assignment being utterly void as against them.  *Thomason* v. *Neeley,* 50 Miss. 310.  But inasmuch as the earlier assignment, though invalid as against them, was valid as against all persons but them, and as against the assignors, it is a necessary logical consequence that the later assignments could have no effect upon any portion of the property previously assigned except the resulting surplus ; and if the property attached were sold on execution, and sold for more than enough to satisfy the attaching creditors, the surplus would belong, not to the debtors, nor to their assignees, as they are assignees under the later assignments, but to them as they are assignees under the earlier, unless, meanwhile, some of the other creditors should have interposed.  *Taylor* v. *Williams,* 1 Ired. 249 ; *Williams* v. *Avent,* 5 Ired. Eq. 47 ; *Ward* v. *Enders,* 29 Ill. 519 ; *Waterbury* v. *Westervelt,* 9 N. Y. 598 ; *Bostwick* v. *Menck,* 40 N. Y. 383 ; *Burtch* v. *Elliott,* 3 Ind. 99 ; *Freeman* v. *Burnham,* 36 Conn. 469.

The only question remaining for consideration is, whether the attachments made by the defendants, having been made after the earlier and before the later assignments, were dissolved under chapter 723, § 1, by the later assignments, be they effectual or not to carry the property attached.  The obvious purpose of the statute was to induce the debtor to make an assignment which would convey the attached property, as well as other property belonging to the debtor, to the assignee for the benefit of the creditors generally in proportion to their respective claims.  This purpose, of course, is not accomplished if the assignment is ineffectual to carry the attached property, because the debtor has previously conveyed it away by a fraudulent deed.  We think, therefore, that it is but reasonable to hold that by the words " the property of any debtor," the statute means property which the debtor still holds and can dispose of as his own, and does not mean property which he has fraudulently conveyed away and which is only in him for his creditors.  Indeed, to hold otherwise would be to bring chapter 723 into a sort of conflict with the statute of fraudulent conveyances, by putting it in the power of the debtor to deprive the creditors of their ordinary remedy, with-

out any compensating benefit to them.  We decide, therefore, that the attachments were not dissolved.

The demurrer raises simply the questions, whether the earlier assignment, taken simply by itself, without explanatory allegations or proofs, is to be regarded as valid, and, if not, whether the later assignments were effectual to pass the property previously assigned, or to dissolve the attachments previously made.  We answer the questions in the negative, and consequently sustain the demurrer.                              *Demurrer sustained.*